THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LUIS A. MEDINA, Defendant-Appellee.

Second District    No. 2—96—0239

Opinion filed April 30, 1997.

David R. Akemann, State's Attorney, of St. Charles (John X. Breslin and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Leonard J. Wojtecki, of Aurora, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The State timely appeals from the circuit court's order granting the post-conviction petition of defendant, Luis A. Medina, and effectively vacating defendant's criminal conviction on the basis of double jeopardy. He asserted in the petition that he had previously been punished where the Department of Revenue issued a "jeopardy" tax assessment against him and a lien on his property pursuant to the Cannabis and Controlled Substances Tax Act (Tax Act) (Ill. Rev. Stat. 1991, ch. 120, par. 2151 *et seq.*). We vacate the judgment.

Following a bench trial, which began on January 13, 1992, defendant was convicted of the unlawful possession of a controlled substance (cocaine) with intent to deliver (Ill. Rev. Stat. 1991, ch. 56$\frac{1}{2}$, par. 1401). He was sentenced to 20 years' imprisonment. The charge arose from the discovery early in March 1991 of approximately nine kilograms of cocaine in a garage on defendant's property. The judgment was affirmed on direct appeal in *People v. Medina*, 239 Ill. App. 3d 871 (1993). No further appeal in that case was taken, and that judgment became final.

On January 17, 1995, with the aid of counsel, defendant filed a post-conviction petition (725 ILCS 5/122—1 *et seq.* (West 1992)), arguing that the drug tax, assessed on March 7, 1991, on the cocaine taken from his possession in the criminal case, together with the subsequent lien on his property, amounted to a final judgment and was a punishment; therefore, defendant argued, his subsequent criminal prosecution was a second punishment barred by the constitutional prohibition against double jeopardy. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Defendant relied principally on *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994) (finding Montana drug tax was punitive and violated prohibition against double jeopardy; tax proceeding to impose tax was equivalent of successive criminal prosecution). See *Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996) (applying *Kurth Ranch* to find drug tax punitive and unconstitutional on basis of double jeopardy where tax was imposed under Tax Act following defendant's criminal prosecution and was functional equivalent of successive criminal prosecution placing defendant in jeopardy for second time for same offense).

Defendant also argued that *Kurth Ranch* must be retroactively applied to him because the rule against double jeopardy was well established but was simply applied to a new factual context. See *United States v. McCaslin*, 863 F. Supp. 1299, 1306 (W.D. Wash. 1994).

The State argued that *Kurth Ranch* was a new ruling of constitutional law and was nonretroactive under *Caspari v. Bohlen*, 510 U.S. 383, 127 L. Ed. 2d 236, 114 S. Ct. 948 (1994), and *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989). Alternatively, the State argued defendant's claim was waived or *res judicata* for his failing to assert it in the original criminal proceedings.

## I. FACTUAL BACKGROUND

The parties stipulated to certain limited facts concerning the proceedings. The salient facts were that defendant was convicted of the drug offense on January 17, 1992, and was sentenced on March 20, 1992. Pursuant to the Tax Act, on March 7, 1991, the Department of Revenue (Department) had assessed a tax on the cocaine of $2,415,000, a penalty of $9,660,000, and interest of $362,234.03, all of which totalled $12,437,234.03. (The amount of interest appears to derive from the final assessment of February 5, 1992, rather than that of March 7, 1991.) The tax was assessed on the same cocaine involved in the offense of which defendant was convicted. Defendant was now liable to pay the tax, and there was a lien on all property that defendant owned or would thereafter acquire until the tax was paid. He was subsequently tried and convicted before the court and filed his direct appeal.

The stipulation states that defendant also "appealed" the Department's assessment and this "appeal" was denied on January 17, 1992. The parties stipulated to the accuracy of the documents in the record from the tax proceeding. The trial court granted defendant's post-conviction petition on February 23, 1996, and later released defendant pursuant to a bail bond.

The record also reveals that, at the criminal trial, the first witness was sworn and the trial judge began to hear evidence on January 13, 1992. The documents from the tax proceeding show that the initial notice of a statutory "jeopardy" assessment was issued on March 7, 1991, stating defendant's total tax liability was $12,105,187.50, including penalties and interest. The notice was entitled "Notice of Tax Liability For Cannabis & Controlled Substance Tax Jeopardy Assessment." The use of the term "jeopardy" in the context of the Tax Act shows that the tax is immediately due and payable because, for example, the Department finds that the taxpayer will depart the state or will conceal his property, or there will be some other difficulty in collecting the tax. In other words, the collection of the tax may be somehow jeopardized. See Ill. Rev. Stat. 1991, ch. 120, pars. 11—1102, 2166. In issuing a jeopardy notice, the Department may then also file a jeopardy assessment lien in the

county recorder's office. Ill. Rev. Stat. 1991, ch. 120, par. 2166(b). The notice of tax liability issued to defendant states that a jeopardy assessment lien was filed and that defendant has 20 days to request a hearing. See *People v. Provenzano*, 265 Ill. App. 3d 33, 36-37 (1994) (describing procedure generally).

On March 7, 1991, the Department also filed a notice of intent to seize assets and a demand for payment within 10 days. A "Notice Of Levy Upon Bank Accounts Or Other Assets Of A Taxpayer Held By A Financial Institution" was issued on March 25, 1991, to various financial institutions. The notice of levy states that the assets are to be held for 20 days and then will be levied upon for payment of the taxes owed. "Levy" under the Tax Act means "the power of distraint and seizure by any means." Ill. Rev. Stat. 1991, ch. 120, par. 2173. If the tax remains unpaid during the specified time and no protest has been lodged, the Department may issue a warrant directing any sheriff or other person to levy on the property; enforcement of the tax levy "proceed[s] in the same manner as *** against property upon judgments by a court." Ill. Rev. Stat. 1991, ch. 120, par. 2173. The notice of levy here demanded that the institution not disburse funds or assets from the account, and, after the 20-day period expires, if the institution does not receive a release, the notice becomes a demand by the Department for any sums due to be applied to the tax liability.

The "Notice of Decision" issued on February 5, 1992, states that a recommended decision of the administrative hearings division has been accepted by the Director of the Department and is now a final administrative decision; it advises defendant of his right to administrative review in the circuit court within 35 days of the date of mailing of the notice. The final assessment recommended on the same date is $12,437,234.03, with interest computed through February 29, 1992. In accordance with the Tax Act provisions for a protest hearing, a "Final Assessment" in that amount was issued on February 25, 1992. See Ill. Rev. Stat. 1991, ch. 120, par. 2166(c) (within 20 days of notice of jeopardy assessment lien, taxpayer may protest that he does not owe some or all of amount of jeopardy assessment and request a hearing in accordance with section 908 of the Illinois Income Tax Act (Ill. Rev. Stat. 1991, ch. 120, par. 9—908); see also *Cook v. Department of Revenue*, 281 Ill. App. 3d 171, 178 (1996) (under retailers' occupation tax provisions, final assessment was judgment or procedural and substantive equivalent).

The "Administrative Findings and Recommendation" recite that the matter came for hearing on January 17, 1992, pursuant to the Department's motion for default and for a hearing on the timely

protest of the respondent (defendant) to the issuance of the notice of tax liability, and that the respondent failed to appear either in person or through a representative. Therefore, the default was granted and the prove up was concluded. The findings also state that respondent was given proper notice and, upon the admission into evidence of the Department's *prima facie* case, the notice of tax liability stood unrebutted. Accordingly, the administrative law judge concluded that the notice should be finalized in its entirety. There is no indication in the record before us that defendant pursued any further appeal of the final tax assessment.

On appeal, again relying on *Teague* and *Caspari*, the State argued that the trial court erred in applying *Kurth Ranch* retroactively to defendant so as to bar his criminal conviction, which had become final. The State again also argued defendant's claim was waived or *res judicata*. Because of the fundamental nature of the double jeopardy claim, we do not deem it waived, particularly where, as here, defendant could not have been expected to assert it prior to the *Kurth Ranch* decision. See *People v. Valentine*, 122 Ill. App. 3d 782, 784 (1984) (claim treated as plain error).

Defendant responded that the prohibition against double jeopardy applied retroactively because it is a substantive constitutional right and not merely a procedural rule. See, *e.g., Robinson v. Neil*, 409 U.S. 505, 35 L. Ed. 2d 29, 93 S. Ct. 876 (1973). Therefore, the *Teague* nonretroactivity analysis did not apply to his case.

This court ordered the parties to file supplemental briefs to address precisely when jeopardy attached in each of the proceedings because we believe *Wilson*, 169 Ill. 2d 306, did not conclusively determine the moment when jeopardy attached in a tax proceeding implicating multiple punishments. Further, we requested the parties to harmonize or explain the significance, if any, of *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256, 109 S. Ct. 2934 (1989), to the possible application of the *Teague* and *Caspari* principle of nonretroactivity of new rules of constitutional law in the context of a collateral post-conviction proceeding.

## II. WHEN JEOPARDY ATTACHED

In conclusory fashion and without explaining other supporting legal authorities, the State interprets *Wilson*, 169 Ill. 2d 306, to mean that jeopardy *never* attached at all in the tax proceeding because a conviction is a prerequisite to tax liability and the assessment before the conviction was but a nullity. Defendant maintains that, under *Kurth Ranch*, it was when the tax was initially assessed on March 7, 1991, that the first jeopardy attached and that this occurred before

his criminal trial began on January 13, 1992, and the tax assessment was therefore the first jeopardy to attach.

## A. Jeopardy Attached First in the Criminal Proceeding

■ As we shall explain below, since defendant protested the tax assessment and the protest hearing did not occur until January 17, 1992, jeopardy first attached in the criminal trial on January 13, 1992, when the first witness was sworn and the trial judge began to hear evidence (*People ex rel. Daley v. Strayhorn*, 121 Ill. 2d 470, 477 (1988)). By analogy to criminal proceedings, we conclude that, in the tax proceeding, jeopardy could only have attached at the very earliest at the beginning of the protest hearing when the tax claim was adjudicated.

## B. Defendant Did Not Establish Violation Necessary for Statutory Post-Conviction Remedy

■ We hold that, since defendant did not establish, either here or below, that there was a substantial denial of his constitutional rights in the proceeding which resulted in his criminal conviction, he is not entitled to relief under the Post-Conviction Hearing Act (Hearing Act) (725 ILCS 5/122—1 *et seq.* (West 1994)). In this collateral proceeding, to be entitled to relief under the statutory provisions, a defendant must establish a substantial deprivation of his constitutional rights in the proceeding that produced the judgment under attack. *People v. Ruiz*, 132 Ill. 2d 1, 9 (1989). If a constitutional violation occurred outside the criminal proceeding whose judgment is under attack and did not lead to a constitutionally flawed conviction and resulting judgment, we believe the claim is outside the subject matter jurisdiction prescribed by the Hearing Act. See *People v. Ferree*, 40 Ill. 2d 483 (1968) (constitutional claims which were not related to the proceeding which resulted in defendant's conviction were not reviewable under the Hearing Act).

## C. *Kurth Ranch* and Its Progeny

In *Kurth Ranch*, 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, the defendants (Kurths) pleaded guilty to drug offenses arising from their production of marijuana and were sentenced to prison on July 18, 1988. The Montana Department of Revenue had assessed taxes and penalties of nearly $900,000 on the drugs and attempted to collect the tax. The Kurths contested the assessments in administrative proceedings which were stayed in September 1988, pending the resolution of their petition filed in the bankruptcy court. See *In re Kurth Ranch*, 145 B.R. 61 (Bankr. D. Mont. 1990).

After examining several factors which persuaded the Supreme

Court that the drug tax was punitive, the Court ultimately concluded that the Montana tax was a punishment for double jeopardy purposes and affirmed the judgment of the circuit court of appeals. *In re Kurth Ranch*, 986 F.2d 1308, 1312 (9th Cir. 1993) (in affirming the district court judgment, circuit court of appeals held that tax was unconstitutional as applied to the Kurths and *"tax assessment levied* by Revenue constituted an impermissible *second* punishment" (emphasis added) in violation of federal double jeopardy clause). The Supreme Court concluded:

> "This drug tax is not the kind of remedial sanction that may follow the first punishment of a criminal offense. Instead, it is a second punishment within the contemplation of a constitutional protection *** and therefore must be *imposed* during the first prosecution or not at all. The *proceeding* Montana initiated *to collect* a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a *second* time 'for the same offense.' " (Emphasis added.) *Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781-82, 114 S. Ct. at 1948.

Defendant argues essentially that *Kurth Ranch* stands for the proposition that the notice of tax assessment itself (not the attempt to actually impose the tax) causes jeopardy to attach. First, the courts in the Kurths' saga were not called upon to decide the precise moment at which jeopardy attached in the tax proceeding. All of the cases assumed that the criminal proceeding antedated the imposition or enforcement of the tax and treated the tax as a "second" impermissible punishment or jeopardy. Notwithstanding the rather loose way in which the courts used the term "assessment" in their decisions, our close scrutiny of the facts in the *Kurth Ranch* line of cases conclusively shows that it was not the assessment alone that triggered the jeopardy, but rather it was the state's attempt to actually impose or collect the tax. The adjudication of the correctness of that tax took place in the bankruptcy court rather than in the administrative proceeding.

An examination of the precise facts of the *Kurth* cases shows that (1) the drug products were seized on October 18, 1987; (2) the initial "Jeopardy Assessment Tax" on the drugs was issued on December 7, 1987, and notice was sent to each defendant-taxpayer; the assessment was subsequently revised on May 7, 1988, from $491,776.20 to $750,096.68; (3) sometime later, the sum of $30,680.01 was then levied upon and seized pursuant to other state court proceedings; (4) the Kurths filed a timely administrative protest of the tax, which proceeding was suspended pending the criminal ac-

tion; (5) the Kurths pleaded guilty and were sentenced on July 18, 1988; (6) on September 9, 1988, the Kurths filed a bankruptcy petition, challenging the tax; this action also stayed the administrative proceeding; and (7) on May 8, 1990, the bankruptcy court held that the tax assessments were arbitrary and capricious and further held that the tax assessments, even if *imposed* in a procedurally correct manner, also violated the proscription against double jeopardy; the bankruptcy court ordered the sums collected returned to the defendants. See *In re Kurth Ranch*, No. CV—90—084—GF (D. Ct. Mont. April 23, 1991) (affirming the bankruptcy court judgment); *Kurth Ranch*, 145 B.R. 61.

Our careful review of the facts and holdings of these cases leads to the inescapable conclusion that the Supreme Court did not hold that the initial assessment of the taxes constituted the first jeopardy; rather, the proceeding to impose or enforce the tax was the equivalent of a second impermissible criminal proceeding placing the defendants "at risk" for a prohibited (second) punishment for the same criminal conduct. All of the cases were resolved on the basis that the criminal jeopardy had already attached, despite the fact that the tax assessments were clearly issued prior to the criminal proceeding.

In *Wilson*, 169 Ill. 2d 306, defendant was indicted in January 1991 on three drug charges. The Department assessed the defendant's liability as $54,385 in taxes, $217,540 in penalties, and $2,039.46 in interest. Notice of the assessment was served on the defendant on January 24, 1991, along with notice of the intent to seize his assets if he failed to make payment in 10 days. The defendant promptly filed a protest with the Department and requested a hearing. Then, he pleaded guilty to the criminal charges and was sentenced and fined. When the Department proceeded to *levy* upon his property (Ill. Rev. Stat. 1989, ch. 120, par. 2173) without affording him a hearing, he brought an action for declaratory and injunctive relief in the circuit court, claiming that the Tax Act could not be enforced against him on the basis of double jeopardy, because he had already been criminally prosecuted and sentenced. The circuit court granted him summary judgment based on the Supreme Court's *Kurth Ranch* decision, as imposition of the tax would violate the prohibition of a successive punishment for the same offense, and ordered the return of the defendant's assets.

The Department appealed. Following the analysis of *Kurth Ranch*, our supreme court held that the drug tax amounted to a form of punishment for double jeopardy purposes and that the tax *imposed* on the defendant *following his criminal prosecution* was the

functional equivalent of a successive criminal prosecution that placed the defendant in jeopardy for a second time for the same offense. *Wilson*, 169 Ill. 2d at 317.

There cannot be a second jeopardy without a former jeopardy. *People v. Kim*, 284 Ill. App. 3d 637, 639 (1996). However, once the double jeopardy rule comes into play, it is only the second proceeding that is constitutionally endangered. *Valencia Lucena v. United States*, 933 F. Supp. 129, 137 (D.P.R. 1996). Thus, it is the second jeopardy that must yield where the first is established. It is clear from our review of *Wilson* (and *Kurth Ranch*) that the initial assessment of the tax was not the operative event in triggering the second jeopardy; rather, the Department's attempt to enforce or impose the tax was more significant. See *Kim*, 284 Ill. App. 3d at 639-40 (without more, jeopardy did not attach merely upon the issuance of a tax assessment and 10-day demand notice). We also believe that, in protesting the tax and not obtaining an administrative hearing, the attachment of jeopardy in the tax proceeding was effectively delayed until at least after the jeopardy attached in his criminal prosecution. See Ill. Rev. Stat. 1991, ch. 120, par. 2173 (protest delays levy).

There is no unanimity among courts concerning when jeopardy attaches in a civil proceeding where the government seeks to impose a civil sanction in addition to a criminal punishment in contravention of the prohibition against multiple punishments. There is an unsettled question whether, in a multiple punishments case involving a civil proceeding, jeopardy attaches at the moment the defendant is placed "at risk," that is, when the trial or adjudication begins (successive prosecutions approach), or whether it attaches when punishment is complete, that is, when the punishment is actually imposed (for example, the actual forfeiture of assets, or the payment of the penalty, or the entry of judgment). See, *e.g., United States v. Idowu*, 74 F.3d 387, 396 (2d Cir. 1996) (and cases cited therein); *United States v. Sanchez-Escareno*, 950 F.2d 193 (5th Cir. 1991) (defendants' executing promise to pay fine was not punishment for double jeopardy purposes; court examined successive prosecutions approach; if government attempted to collect on notes, jeopardy would attach when trier of fact begins to hear evidence); see also *Valencia Lucena*, 933 F. Supp. at 137-38; *United States v. Tamez*, 881 F. Supp. 460, 462-66 (E.D. Wash. 1995).

We think that a tax proceeding of this type is analogous to a criminal prosecution. Thus, where, as here, the State issues a drug tax assessment, we believe that no jeopardy attached merely upon the issuance of the assessment and lien. The taxpayer stands in a position similar to that of a criminal defendant who has been charged.

Defendant here filed a timely protest. The disputed tax was not adjudicated until January 17, 1992, four days after his criminal trial began on January 13, 1992. In the criminal trial, jeopardy attached when the first witness was sworn and the trial judge began to hear evidence. In the tax proceeding, where the tax is directed against a person and he has protested the tax (unlike the situation in an *in rem* forfeiture proceeding in which no person need appear), we conclude that jeopardy could not have attached until the tax hearing began and the trier of fact began to consider evidence.

We find some support for our conclusion in *People v. Litchfield*, 902 P.2d 921 (Colo. App. 1995). There, the defendants were arrested when marijuana was discovered in their rental car. The state assessed a civil (drug) tax and penalty against the defendants as a result of the arrest, and the defendants filed a timely objection and requested a hearing. The defendants moved to dismiss the criminal charges on the basis of double jeopardy because of the drug tax "punishment," but the trial court found that jeopardy had not yet attached as there was no final administrative determination of their obligation to pay the tax. The Colorado appellate court agreed. Citing *Sanchez-Escareno*, 950 F.2d 193, the court held that, since there was no hearing and no final determination of the tax liability, the defendants had not yet paid any money to the state, and the state had not taken any steps to collect the money, no jeopardy had attached. *Contra Bryant v. State*, 660 N.E.2d 290 (Ind. 1995) (under Indiana procedure, jeopardy attached at the moment defendant was served with record of jeopardy findings and jeopardy assessment notice and demand).

## III. CONCLUSION

In sum, since defendant did not make the requisite showing of a substantial constitutional violation in the criminal proceeding which led to his conviction, he cannot obtain relief under the Hearing Act. The record before us shows that the first jeopardy attached in the criminal proceeding when the first witness was sworn and the trial court began to hear evidence. The jeopardy in the tax proceeding occurred thereafter and was the second jeopardy. However, if the tax was unconstitutionally applied to defendant, it appears to have occurred in a proceeding outside the jurisdictional reach of the Post-Conviction Hearing Act. The defendant's remedy, if any, must lie elsewhere. See, *e.g., Provenzano*, 265 Ill. App. 3d 33 (discussing limits of special statutory jurisdiction in tax case); *State v. Sproles*, 672 N.E.2d 1353 (Ind. 1996) (challenge to drug tax premised on double jeopardy claim must be made in administrative proceeding or in tax court).

We do not decide here when jeopardy attaches in a similar tax proceeding where the defendant has not protested the tax assessment. We leave that determination for another day. Because defendant has not demonstrated either here or below that his claim warrants relief under the Hearing Act, we must vacate the judgment of the circuit court which granted his petition. As a result of our disposition, we do not reach the question whether the double jeopardy ruling in *Kurth Ranch* must be applied retroactively.

The judgment of the circuit court of Kane County is vacated.

Judgment vacated.

GEIGER, P.J., and RATHJE, J., concur.