# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*People v. Cervantes*, 2013 IL App (2d) 110191

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE L. CERVANTES, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0191 |
| Filed | June 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for armed violence, unlawful possession of a controlled substance with intent to deliver, and other drug offenses, where the trial court initially found defendant not guilty of unlawful possession of a controlled substance with intent to deliver and then entered a not-guilty finding as to the armed violence charge based on the mistaken belief that the armed violence charge was based on the charge of possession with intent to deliver and that the not-guilty verdict as to that charge negated the armed violence charge, the trial court violated the prohibition against double jeopardy when it reconsidered its rulings and entered a finding of guilty as to the armed violence charge; therefore, the armed violence conviction was reversed and the cause was remanded for sentencing on defendant's remaining convictions. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 09-CF-418; the Hon. T. Jordan Gallagher, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Thomas A. Lilien and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Schostok and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jose L. Cervantes, appeals from an order of the circuit court of Kane County finding him guilty of the offense of armed violence (720 ILCS 5/33A-2(a) (West 2008)) following a trial without a jury. We reverse and remand.

¶ 2                                    BACKGROUND

¶ 3    On March 9, 2009, a grand jury indicted defendant as follows: count I, armed violence; count II, unlawful possession of a controlled substance with intent to deliver within 1,000 feet of public housing (720 ILCS 570/407(b)(1) (West 2008)); count III, unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2008)); count IV, unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2008)); count V, unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(d) (West 2008)); and count VI, unlawful possession of cannabis (720 ILCS 550/4(d) (West 2008)). Defendant waived a jury, and the following evidence was adduced at the bench trial.

¶ 4    On February 6, 2009, the police executed a search warrant at the residence located at 308 N. Westgate in Aurora, Illinois. Defendant, the target of the search warrant, was staying in the southwest bedroom of the house. While officers entered the house through a door, other officers broke a window to defendant's bedroom. Some of the glass fell inside the room. Immediately beneath the broken window was a child's plastic twin bed in the shape of a car. The bed was low to the floor, and the officers who entered the bedroom did not observe a gun beneath the bed. Defendant was kneeling on the floor within a foot or two from the bed, rubbing a white substance into the carpet with his left hand. Defendant's right arm was extended toward the bed, palm down, at shoulder level, approximately six inches above the bed. Defendant's hand was "right at the edge of the bed." A small child was on the bed as was some glass from the broken window. Defendant was arrested, and police seized cocaine and marijuana from the bedroom along with baggies, money, and three electronic scales.

¶ 5 Investigator Cottrell Webster collected the evidence from the bedroom, which was described as "small," approximately 6 feet by 8 feet or 6 feet by 10 feet. When Webster entered the bedroom, defendant was in custody on the floor in front of the bed, where cocaine had been rubbed into the carpet and baggies were found. Webster lifted up the bed with his hand in the middle of the plastic frame (the child was not on the bed at that point). He removed a wooden slat and saw a revolver on the floor under the bed, less than six inches from the front of the bed. Webster testified that the bed was "not heavy at all," and that it did not have a metal frame. He removed four live rounds from the gun.

¶ 6 The State offered expert testimony that the cocaine and cannabis found in the bedroom were for distribution rather than personal consumption.

¶ 7 Defendant had been a fugitive from warrants since 2003. After his arrest in the Westgate house in February 2009, defendant admitted to police that the contraband found in the bedroom was his. Defendant also admitted selling drugs in order to support himself and his family, claiming that it was necessary. Defendant told police that, because of his fugitive status, he was unable to get a job. Defendant did not testify at trial.

¶ 8 The matter came on for ruling nearly a month following the bench trial,[1] and the trial court began by discussing the evidence on count III, unlawful possession of a controlled substance with intent to deliver, saying, "I'm going to talk about count [III] first because I think that disposes of a lot." The trial court found that three items of suspected cocaine were placed into one evidence bag and that the laboratory tested only one of those items. The court then said:

"And then the overall weight, even with everything in there, I don't believe is sufficient to show beyond a reasonable doubt that he possessed with the intent to deliver. So I am going to find him not guilty on [count III], which I think makes [count II and count I] fail. So he will be found not guilty on [counts I, II, and III.]

With respect to [count IV], I find him guilty; [count V], I find him guilty; and [count VI], I find him guilty.

[Count V], the possession of cannabis with intent to deliver, I think the evidence was overwhelming that there was sufficient evidence to convict him on that.

Do we need a presentence investigation?"

¶ 9 The next 40 lines of transcript are a discussion about setting a date for sentencing.

¶ 10 The prosecutor then said: "Judge, if I could just, if I could clarify your ruling." The prosecutor pointed out that the armed violence charged in count I of the indictment was predicated on the charge of unlawful possession of a controlled substance in count IV, on which count the court had found defendant guilty. A lengthy discussion ensued between the court and the prosecutor over which count charged what. During the discussion, the following occurred:

"[Assistant State's Attorney]: The felony that we are alleging he committed in

---

[1]The trial court had stated at the trial's conclusion that it was going to obtain the trial transcript and read the applicable case law before ruling.

combination in [count I] would be the unlawful possession of a controlled substance in violation of 402(c) which is what is alleged in [count IV].

[The Court]: Okay. I am going to have to go back and look at that, okay, because I was reading that wrong."

Another scheduling discussion took place, and then the court said: "I want to reread those cases. I had resolved it on another line of thinking, and I was wrong. Thank you for pointing that out. And I just need to read those other cases on armed violence one more time." The court suggested continuing the matter for a week, saying, "I can rule on that count [I]."

¶ 11 The written order entered after the hearing had originally been drafted to find defendant not guilty on counts I, II, and III. Count I was then scratched out. Paragraph five of the order provided that the case was continued for ruling on count I and for setting a sentencing date. On the date set for ruling, the trial court stated, "This is here for my ruling on count [I] of the indictment following a bench trial. Before I get to that, I just want the record to be clear as to some other findings that I've made." The court then reiterated its previous ruling and the reasons therefor with respect to the charge of possession of a controlled substance with intent to deliver and then said:

"With respect to the armed violence [charge], I was under the mistaken belief, and had not read the indictment close enough, and I thought the predicate felony was the possession with intent, and in fact it wasn't, and [the assistant State's Attorney] was kind enough to point out to me that it was the underlying straight possession which I did find [defendant] guilty of. So I went back and read the armed violence cases."

The court then analyzed the evidence with respect to whether the revolver under the bed had been immediately accessible to defendant. The court rejected as irrelevant the State's argument that defendant owned the gun and said that the issue was whether defendant had immediate access to the gun. The court stated that the cases cited by the parties were not helpful. The court summarized Webster's testimony and found as follows:

"I don't believe [defendant] was reaching for the gun, but that's not the issue. The issue is was it immediately accessible had he wanted to. And the testimony of [Webster] was to get to the gun, you couldn't just reach under the bed. You had to lift the bed up. However, I don't think it was very difficult to lift the bed up, according to [Webster's] testimony, and all [defendant] had to do is lift it up and he could have the gun. The gun was there, he knew the gun was there. Therefore, I am going to find that it was immediately accessible and find [defendant] guilty of [armed violence]."

¶ 12 Defendant filed a written posttrial motion, in which he did not raise a double jeopardy issue based on the court's initial finding of not guilty of armed violence. However, at the hearing on the posttrial motion, defense counsel raised the issue orally. The court continued the matter to give the State time to respond and to obtain the transcript of the original ruling after trial. Ultimately, the court denied the posttrial motion, finding that it had "corrected" the mistake after the State brought the error to the court's attention. The court denied defendant's request for treatment, sentenced him to 15 years' imprisonment, and imposed a drug fine of $1,365. Defendant filed a timely appeal.

¶ 13                                   ANALYSIS

¶ 14    Defendant argues that: (1) the trial court's "rescission" of the not-guilty finding on count I violated double jeopardy principles; (2) defendant was not proved guilty beyond a reasonable doubt of armed violence; and (3) this cause must be remanded for compliance with Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001). If defendant is correct that the evidence did not prove him guilty of armed violence, then we would not need to consider his double jeopardy argument. Because cases should be decided on nonconstitutional grounds whenever possible, and we should reach constitutional issues only as a last resort (*In re E.H.*, 224 Ill. 2d 172, 178 (2006)), we will address defendant's second argument first.

¶ 15            I. Whether Defendant Was Proved Guilty of Armed Violence

¶ 16    A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law, with exceptions not germane here. 720 ILCS 5/33A-2(a) (West 2008); *People v. Scott*, 2011 IL App (2d) 100990, ¶ 12. Defendant does not contest his guilt of the underlying felony, possession of a controlled substance. Rather, he disputes that he was armed with the revolver when he possessed the controlled substance. Specifically, defendant argues that, because a child was lying on the bed when the police entered the bedroom, he could not have "swiftly raised the bed and grabbed the gun." In considering a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Ward*, 154 Ill. 2d 272, 326 (1992). The trier of fact determines the witnesses' credibility and decides the inferences to be drawn from the evidence. *Scott*, 2011 IL App (2d) 100990, ¶ 14.

¶ 17    A person is considered armed with a dangerous weapon when he carries on or about his person or is otherwise armed with a dangerous weapon. *People v. Condon*, 148 Ill. 2d 96, 109 (1992). Where the defendant does not have personal physical possession, yet has the intent and capability to maintain control and possession, and the defendant knows of the presence of the weapon, the defendant has constructive possession. *Condon*, 148 Ill. 2d at 112. If the weapon is within the defendant's reach–is immediately accessible to him–when the police enter, the defendant is armed. *Condon*, 148 Ill. 2d at 110; *Scott*, 2011 IL App (2d) 100990, ¶ 18. Here defendant does not dispute that the loaded revolver was a dangerous weapon or that he knew that it was under the bed when the police entered his bedroom. He maintains that the gun was not immediately accessible, because he could not have easily lifted up the bed to get to it. We disagree.

¶ 18    Defendant was kneeling on the floor at the side of the bed, one or two feet from it, when the police entered. His right arm was extended toward the bed, his palm toward the floor, his hand "right at the edge of the bed," approximately six inches above it. The loaded revolver was within six inches of the side of the bed facing defendant. The bed was a child's twin bed, made of plastic. Webster easily lifted the bed up with one hand. There was testimony that a small child was on the bed when the police entered; however, the record does not show the age, size, or weight of the child.

¶ 19    This case is not like *People v. Shelato*, 228 Ill. App. 3d 622 (1992), upon which

-5-

defendant relies. In *Shelato*, the defendant was seated on a couch against the west wall of a residence when the police entered. *Shelato*, 228 Ill. App. 3d at 624. One of the officers found a duffel bag on the floor by a couch along the east wall. *Shelato*, 228 Ill. App. 3d at 624. When the police entered the residence, the bag was zippered closed and contained a gun wrapped in a rag, under 68 bags of marijuana. *Shelato*, 228 Ill. App. 3d at 624. The appellate court found the defendant, as a matter of law, not guilty of armed violence, because, in order to reach the gun, the defendant would have had to unzip the bag, dig underneath the many bags of marijuana, and unwrap the gun from the rag. *Shelato*, 228 Ill. App. 3d at 627-28. Here, although defendant's hand was above the bed when the police entered the bedroom, defendant was kneeling practically next to the side of the plastic bed where the gun was located. He could have quit rubbing cocaine into the carpet and lifted the bed with his left hand while grabbing the revolver with his right. Accordingly, unlike in *Shelato*, the gun was immediately accessible to defendant.

¶ 20                    II. Whether Double Jeopardy Bars Defendant's
                              Conviction of Armed Violence

¶ 21    Having determined that the evidence was sufficient to prove defendant guilty of armed violence beyond a reasonable doubt, we must now consider whether the court violated double jeopardy principles when it announced that defendant was not guilty of armed violence and then ultimately entered a conviction. Even though defendant did not raise this issue in his written posttrial motion, the State agrees that we may excuse a procedural default where plain error affecting a substantial right has occurred. *People v. Henry*, 204 Ill. 2d 267, 281 (2003). A conviction that violates double jeopardy is a substantial injustice and may be reviewed as plain error. *People v. Brown*, 227 Ill. App. 3d 795, 797-98 (1992). Moreover, it would be unjust to enforce any forfeiture here, because the trial court gave the State adequate time to respond to defendant's oral argument on his posttrial motion, and the issue was fully presented to the trial court.

¶ 22    Defendant contends that he was "unequivocally" found not guilty of armed violence. From this conclusion, defendant reasons that the trial court's rescission of its acquittal violated double jeopardy principles. Because this issue involves the application of law to uncontested facts, we review the issue *de novo*. *People v. Bellmyer*, 199 Ill. 2d 529, 537 (2002).

¶ 23    Following oral argument on appeal, while this case was still under deliberation by this court, the United States Supreme Court decided *Evans v. Michigan*, 568 U.S. ___, 133 S. Ct. 1069 (2013), a double jeopardy case with an issue that is similar, if not identical, to the issue in the present case. In light of *Evans*, we ordered the parties to submit supplemental briefs. The briefing, which was helpful to this court, has been completed.

¶ 24    The fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution provide that no person shall be twice placed in jeopardy for the same offense. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. The constitutional bar against double jeopardy provides three basic protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same

offense after conviction; and (3) it protects against multiple punishments for the same offense. *People v. Milka*, 211 Ill. 2d 150, 170 (2004). The underlying idea, one deeply ingrained in the Anglo-American system of jurisprudence, is that the State, with all its resources and power, should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting the individual to embarrassment, expense, and ordeal and compelling the individual to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that he may be found guilty even though he is innocent. *United States v. Scott*, 437 U.S. 82, 87 (1978); *Green v. United States*, 355 U.S. 184, 187-88 (1957).

¶ 25   The first protection is at issue in our case. The law attaches particular significance to an acquittal. *Scott*, 437 U.S. at 91; *People v. Pender*, 154 Ill. App. 3d 978, 981 (1987). To permit a second trial after an acquittal, however erroneous the acquittal may have been, presents an unacceptably high risk that the State, with its superior resources, may wear down a defendant so that, even though innocent, he may be found guilty. *Scott*, 437 U.S. at 91.

¶ 26                              A. The Decision in *Evans v. Michigan*

¶ 27   *Evans* presented the issue of whether retrial is barred when a trial court grants an acquittal because the prosecution failed to prove an "element" of the offense, that, in actuality, it did not have to prove. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074.

¶ 28   In *Evans*, the defendant was charged with burning "other real property," and the State's evidence at trial showed that the defendant burned down an unoccupied house. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1073. The applicable pattern jury instruction erroneously provided that an element of the offense was that the building was not a dwelling house. *Evans*, 568 U.S. at ___, ___ n.2, 133 S. Ct. at 1073, 1074 n.2. Based on the incorrect instruction, the defendant persuaded the trial court to grant his motion for a directed verdict on the ground that the State failed to prove that the building he burned was not a dwelling house. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1073. It was undisputed upon the State's appeal to the Michigan Court of Appeals that the trial court had "misperceived the elements of the offense with which [the defendant] was charged and erred by directing a verdict." (Internal quotation marks omitted.) *Evans*, 568 U.S. at ___, 133 S. Ct. at 1073-74. Nevertheless, the Michigan Court of Appeals rejected the defendant's argument that the double jeopardy clause barred retrial, and the Michigan Supreme Court affirmed. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074. The Michigan Supreme Court held that, when a trial court grants a motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court's ruling does not constitute an acquittal for double jeopardy purposes and retrial is not barred. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074. The Michigan Supreme Court reasoned that, when a trial court mistakenly identifies an extraneous element and dismisses a case solely on that basis, it has not resolved any factual element necessary to establish the offense charged. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075.

¶ 29   The United States Supreme Court began its analysis by emphasizing that the answer lay in its own precedents, which defined an acquittal "to encompass any ruling that the prosecution's proof is insufficient to establish criminal liability for an offense." *Evans*, 568

U.S. at ___, 133 S. Ct. at 1074-75. An acquittal includes a ruling that the evidence is insufficient to convict; a factual finding that necessarily establishes the defendant's lack of criminal culpability; and "any other" ruling that "relate[s] to the ultimate question of guilt or innocence." (Internal quotation marks omitted.) *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. The Court drew a distinction between "substantive" rulings and "procedural" rulings that are unrelated to factual guilt or innocence but that result in dismissal. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. To permit a second trial after an acquittal, "however mistaken the acquittal may have been," violates double jeopardy. (Internal quotation marks omitted.) *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. The Court declared that the defendant's acquittal in *Evans* was the product of an erroneous interpretation of governing legal principles, but that the error affected only the accuracy of the determination to acquit, not its essential character. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075.

¶ 30        The Court rejected the State's argument that an acquittal is a resolution, correct or not, of some or all of the factual elements of the offense charged (*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977)) as too narrow a reading of *Martin Linen* and as inconsistent with the Court's decisions after *Martin Linen*. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1077. The Court stated that its focus in *Martin Linen* was on the significance of a judicial acquittal under Federal Rule of Criminal Procedure 29 (Fed. R. Crim. P. 29), and that the holding in *Martin Linen* "did not depend upon defining the 'elements' of an offense." *Evans*, 568 U.S. at ___, 133 S. Ct. at 1077. "Culpability (*i.e.*, the 'ultimate question of guilt or innocence') is the touchstone, not whether any particular elements were resolved or whether the determination of nonculpability was legally correct." *Evans*, 568 U.S. at ___, 133 S. Ct. at 1077 (quoting *Scott*, 437 U.S. at 98). The Court proclaimed that the issue is whether the bottom-line question of culpability was resolved. *Evans*, 568 U.S. at ___ n.6, 133 S. Ct. at 1078 n.6. The Court stated:

> "In the end, this case follows those that have come before it. The trial court's judgment of acquittal resolved the question of [the defendant's] guilt or innocence as a matter of the sufficiency of the evidence, not on unrelated procedural grounds. That judgment, 'however erroneous' it was, precludes reprosecution on this charge, and so should have barred the State's appeal as well. [Citation.]" *Evans*, 568 U.S. at ___, 133 S. Ct. at 1078.

¶ 31        The Court lastly refused to reconsider its past decisions, saying that the "logic of these cases still holds." *Evans*, 568 U.S. at ___, 133 S. Ct. at 1080. The Court equated judicial acquittals and jury acquittals and reiterated that any contention that the double jeopardy clause itself leaves open a way of correcting legal errors is at odds with the well-established rule that the bar attaches to an acquittal that is patently wrong in law. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1081.


¶ 32                        B. Issues Addressed in Supplemental Briefing

¶ 33        We ordered the parties to address four issues: (1) whether the present case is controlled by *Evans*; (2) whether the subsequent finding of guilty of armed violence in the present case was the equivalent of a "retrial" for double jeopardy purposes; (3) more specifically, whether

*Evans* is distinguishable on the ground that, in the instant case, the trial court entered an acquittal after a bench trial, rather than by way of a midtrial directed verdict, and then reversed itself without subjecting defendant to additional fact-finding proceedings; and (4) whether existing Illinois case law as cited in the parties' original briefs is affected by *Evans*, and, if so, how.

¶ 34　　　　　　　　　C. The Parties' Contentions in Their Supplemental Briefs

¶ 35　　　Defendant contends that *Evans* controls the instant case for two reasons: (1) the antecedent legal errors leading to the erroneous acquittals in *Evans* and the instant case were the same; and (2) *Evans* did not announce a new rule but affirmed the case law defendant relied upon in his original briefs. Defendant contends that the trial court's ruling in the present case went to guilt or innocence and thus, under *Evans*, constituted an acquittal. Further, defendant argues that double jeopardy principles require the conclusion that defendant was exposed to double jeopardy when the trial court withdrew its not-guilty finding and continued to contemplate whether the State had met its burden. Defendant maintains that the same result would obtain after either a midtrial directed verdict or a bench or jury trial. Finally, defendant challenges the third issue's assumption that no further fact-finding proceedings occurred here, noting that the trial court made further findings of fact with regard to the armed violence charge after it withdrew its not-guilty finding.

¶ 36　　　The State concedes that *Evans* vitiates its argument, made in its original response brief, that there was no acquittal because the trial court did not resolve any factual element of the offense charged. Otherwise, the State contends that *Evans* does not require reversal where defendant was not subjected to further fact-finding proceedings commenced by the State after the trial court's initial not-guilty finding and where the ruling was ambiguous, showing that the trial court did not necessarily have the intent to enter an acquittal. Essentially, the State seeks to distinguish *Evans* on two factual bases: (1) in *Evans*, the trial court was not "confused" when it granted a directed verdict; and (2) in *Evans*, the State sought to retry the defendant, whereas, here, there was no second prosecution.

¶ 37　　　　　　　　　　D. Whether *Evans* Governs the Present Case

¶ 38　　　In our view, *Evans* governs the instant case insofar as whether defendant was acquitted, because the issue presented in *Evans* was similar, if not identical, to the issue presented here, although the issues arose in dissimilar factual contexts. In *Evans*, because of an incorrect pattern jury instruction, the defendant successfully argued that he was entitled to a directed verdict of not guilty for the State's failure to prove an element of the offense that, in reality, was not an element. Here, the trial court's misreading of the indictment led it to find defendant not guilty for the State's failure to prove an element that was not an element. That *Evans* involved a directed verdict and our case involves a verdict after a trial is not significant, because in both cases the legal effect of an acquittal is the same for double jeopardy purposes. The United States Supreme Court has treated as acquittals a trial judge's directed verdict of not guilty, an appellate court's reversal of a conviction for insufficiency of the evidence, and a jury's not-guilty verdict. *Blueford v. Arkansas*, 566 U.S. ___, ___, 132

S. Ct. 2044, 2054 (2012) (Sotomayor, J., dissenting, joined by Ginsburg & Kagan, JJ.). Findings following bench trials are treated the same as verdicts following jury trials. *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005).

¶ 39 The State would have us draw the distinction that the trial court in *Evans* misinterpreted the statute while the trial court in the instant case, as the record demonstrates, was confused as to the charge. This argument is reminiscent of the State's argument in *Evans*, where it tried to draw a distinction between a misconstruction of a statute and the erroneous addition of an extraneous element to the charged offense. See *Evans*, 568 U.S. at ___, 133 S. Ct. at 1076. As the *Evans* Court commented, "This is far too fine a distinction to be meaningful ***." *Evans*, 568 U.S. at ___, 133 S. Ct. at 1077. We must decide whether the erroneous not-guilty finding in the instant case was an acquittal for double jeopardy purposes, which was the precise issue before the Court in *Evans*.

¶ 40                                  E. *Evans* Applied to Our Facts

¶ 41 In *People v. Williams*, 188 Ill. 2d 293 (1999), a first-degree murder and armed robbery case, the defendant moved for a directed verdict on both charges at the close of the State's case-in-chief. *Williams*, 188 Ill. 2d at 298. The trial judge entertained argument from both parties and then found that the State failed to present a *prima facie* case. *Williams*, 188 Ill. 2d at 298. The judge stated, " 'I'm going to grant the motion for a directed finding and finding of not guilty as to the armed robbery as well ***.' " *Williams*, 188 Ill. 2d at 298. The judge explained her reasoning but then *sua sponte* offered to hold in abeyance her ruling on the armed robbery charge, pending further submissions by the prosecution. *Williams*, 188 Ill. 2d at 298-99. The prosecutor accepted the judge's offer and asked that the ruling be held in abeyance to which the judge responded, " 'All right. There's a finding of not guilty as to the charges of murder. As to the armed robbery charge, I am more than willing to look at any authority.' " *Williams*, 188 Ill. 2d at 299. The next day, the State presented its authority, and, following argument by each side, the judge denied the defendant's motion for a finding of not guilty as to the armed robbery charge. *Williams*, 188 Ill. 2d at 299. The appellate court affirmed. *Williams*, 188 Ill. 2d at 299.

¶ 42 The defendant argued before our supreme court that the trial court's finding of not guilty on the armed robbery charge was unequivocal, which triggered the bar against double jeopardy. *Williams*, 188 Ill. 2d at 300. Our supreme court stated that the issue was not the effect of a finding of not guilty, but whether the trial court in fact made a finding of not guilty. *Williams*, 188 Ill. 2d at 301. The court held that the trial judge did not unequivocally grant the defendant's motion for a finding of not guilty on the armed robbery charge, because the record as a whole disclosed that the judge *sua sponte* conveyed to the parties that she would wait to review any legal authority presented by the State before ruling on the defendant's motion for a finding of not guilty. *Williams*, 188 Ill. 2d at 302. "Consequently, [the defendant] was never acquitted of the armed robbery charge, and his conviction for armed robbery, therefore, did not place him in double jeopardy." *Williams*, 188 Ill. 2d at 303. Thus was born our supreme court's requirement that a finding of not guilty be "unequivocal" as a threshold to a double jeopardy analysis.

¶ 43 In *Henry*, the trial court's directed verdict in favor of the defendant on the charge of aggravated battery was unequivocal where the court neither indicated a willingness to examine legal authority nor offered to postpone the ruling until the parties had an opportunity to present authority. *Henry*, 204 Ill. 2d at 286. Rather, after the verdict was directed, the court and the parties "acted in accordance with the belief" that the judge had granted the motion for a directed verdict, by discussing whether the State could appeal. *Henry*, 204 Ill. 2d at 287. Toward the end of that discussion, the State requested that the court reserve ruling on the directed verdict motion, and the court then reconsidered its ruling, vacated it, and, after a recess and an instructions conference, denied the motion for a directed verdict. *Henry*, 204 Ill. 2d at 287-88. The supreme court distinguished *Williams* and held that it was improper for the trial court to reconsider and vacate its ruling finding the defendant not guilty of aggravated battery. *Henry*, 204 Ill. 2d at 288.

¶ 44 *Henry* set forth a two-prong analysis for deciding double jeopardy cases. The first prong is to decide whether the trial court's ruling was an unequivocal judgment of acquittal; if it was, then the second prong requires the reviewing court to determine whether the acquittal represented a resolution of some or all of the factual elements of the offense charged; if so, then the bar of double jeopardy applies. *Henry*, 204 Ill. 2d at 284. *Evans* does not contain a similar equivocal-unequivocal threshold analysis. Assuming that the threshold requirement still exists, it was met here. The trial court unhesitatingly found defendant not guilty of armed violence. However, *Henry*'s second prong must yield to *Evans*' broader definition of "acquittal," as the double jeopardy clause of our state constitution is construed in the same manner as the double jeopardy clause of the federal constitution. *In re P.S.*, 175 Ill. 2d 79, 91 (1997). Under *Evans*, the inquiry is whether the trial court ruled that the evidence was insufficient to convict. See *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. The inquiry can be further stated as whether the trial court's ruling was based on guilt or innocence or on a procedural ground unrelated to guilt or innocence. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. Here, the trial court found that the State failed to prove possession of a controlled substance with intent to deliver, thus requiring a not-guilty finding on the armed violence charge. Clearly, the trial court found that the State's evidence was insufficient to convict defendant. Accordingly, we hold that defendant was acquitted of armed violence.

¶ 45 The State disagrees that the not-guilty finding here was unequivocal and contends that there was no acquittal, because the trial court's ruling was ambiguous, and cites *People v. Burnette*, 325 Ill. App. 3d 792 (2001). In *Burnette*, the defendant appealed his conviction of home invasion, resting his double jeopardy claim on the following colloquy between the trial judge and the prosecutor:

" 'THE COURT: *[T]here's a finding of not guilty as to the second count alleging as follows*: "That he not being a police officer acting in the line of duty without authority knowingly entered the dwelling place of Michael Wells and he had reason to know that one or more persons were present therein and while armed with a dangerous weapon, to wit, a handgun, did *use force* upon Michael Wells within said dwelling place, whether or not injury occurred." *Finding of guilty*.

MR. HOLZMAN: Judge, there's a finding of guilty?

-11-

THE COURT: *There's a finding of guilty.* And as to the third and last home invasion count, there's a finding of not guilty.' " (Emphases in original.) *Burnette*, 325 Ill. App. 3d at 806-07.

The appellate court held that double jeopardy principles were not implicated, because the trial court made an "inadvertent" statement that it corrected "virtually with the same breath." (Internal quotation marks omitted.) *Burnette*, 325 Ill. App. 3d at 807. The State argues that *Burnette* and the instant case are distinguishable from *Evans*, because in *Burnette* and the instant case, the trial court made a determination that needed further "clarification" where the trial court's intent to acquit was not evident.

¶ 46     We disagree that *Burnette* is factually similar to our case. In *Burnette*, it was obvious that the trial court misspoke where it said "not guilty" and "guilty" within, basically, the same sentence. The prosecutor in *Burnette* did not argue the trial court into a guilty finding after the judge said "not guilty," as happened here. In our case, there was nothing ambiguous about the trial court's ruling or its intent. Here, the trial judge stated that he had resolved the issue of defendant's guilt or innocence "on another line of thinking, and I was wrong."

¶ 47     The State also relies on *People v. Vilt*, 119 Ill. App. 3d 832 (1983). In *Vilt*, the trial court allowed and then denied the defendant's motion for a directed verdict, "virtually with the same breath." *Vilt*, 119 Ill. App. 3d at 834-35. The appellate court described what happened thusly: "It is obvious from the record that the trial judge, *acting under a misapprehension of the facts*, orally allowed this motion [for a directed verdict] and then immediately reversed himself when his mistake was pointed out. No passage of time intervened." (Emphasis added.) *Vilt*, 119 Ill. App. 3d at 835. Under those circumstances, the appellate court held that the defendant was never acquitted and that the trial court's reversal did not place the defendant in jeopardy a second time. *Vilt*, 119 Ill. App. 3d at 835. However, when we look at *Vilt* in light of *Evans*, it is doubtful that *Vilt* survives. The trial court in *Vilt* ruled in response to the defendant's motion for a directed verdict, " 'That motion will be allowed.' " *Vilt*, 119 Ill. App. 3d at 833. The prosecutor then asked why. *Vilt*, 119 Ill. App. 3d at 833-34. The judge responded, " 'Wasn't any evidence of anal sodomy.' " *Vilt*, 119 Ill. App. 3d at 834. Then the prosecutor pointed out that the judge was confusing the testimony of two different victims, whereupon the judge agreed that he was thinking of the wrong evidence and denied the motion. *Vilt*, 119 Ill. App. 3d at 834. The judge ruled on the sufficiency of the evidence, albeit mistakenly. Under *Evans*, the timing of the judge's reversal would not change the fact of the acquittal, because an acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was correct or not. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075-76.

¶ 48     The State in our case does not discuss at all the paramount question posed by *Evans*, whether the trial judge's ruling was based on guilt or innocence or on a merely procedural ground. Instead, the State's position seems to be that a trial judge's "wrong" finding of not guilty equals an ambiguous or inadvertent ruling. The State's position is not consistent with the law as stated in *Evans*. As the Court acknowledged in *Evans*, the Court did not "write on a clean slate." *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074. In *Fong Foo v. United States*, 369 U.S. 141 (1962), the Court held that an acquittal based on "an egregiously erroneous foundation" was nevertheless an acquittal for double jeopardy purposes. *Fong Foo*, 369 U.S.

-12-

at 143. In *Evans*, the Court stated that it had applied *Fong Foo*'s principle "broadly" for half a century. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074. Citing *Scott*, the *Evans* Court reiterated that the fact that an acquittal resulted from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of the determination but not its essential character. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1074; see also *Sanabria v. United States*, 437 U.S. 54, 68-69 (1978). The Court in *Scott* called the above rule " 'the most fundamental rule in the history of double jeopardy jurisprudence.' " *Scott*, 437 U.S. at 103-04. In *Arizona v. Rumsey*, 467 U.S. 203 (1984), the Court affirmed that an "acquittal on the merits bars retrial even if based on legal error." *Rumsey*, 467 U.S. at 211. The bottom line is whether the question of criminal culpability was resolved. *Burks v. United States*, 437 U.S. 1, 11 n.6 (1978). Here, it was.

¶ 49           F. Whether Defendant Was Subjected to a Successive
                  Prosecution for Double Jeopardy Purposes

¶ 50     The State contends that, even if defendant was acquitted of armed violence, he was not subjected to double jeopardy, because the State did not gain a new trial or a renewed chance to prosecute defendant following the vacatur of the not-guilty finding. Defendant argues that double jeopardy principles require the conclusion that defendant was exposed to double jeopardy when the trial court continued to deliberate whether the State met its burden on the armed violence charge and then made a second ruling on the same charge.

¶ 51     The guarantee against double jeopardy is not implicated before that point in the proceedings when jeopardy attaches. *Serfass v. United States*, 420 U.S. 377, 391 (1975). Jeopardy does not attach, and the constitutional prohibition has no application, until a defendant is put to trial before the trier of fact. *Serfass*, 420 U.S. at 388. In a bench trial, jeopardy attaches when the first witness is sworn and the court begins to hear evidence. *Serfass*, 420 U.S. at 388; *Bellmyer*, 199 Ill. 2d at 538. Here, there is no question that jeopardy attached when the State's first witness was sworn and the court began hearing evidence.

¶ 52     The issue is when jeopardy terminated. The State argues that there was but one jeopardy throughout the entire proceedings, despite the acquittal, because there was but one trial. The State maintains that double jeopardy would have applied only if the State had sought to persuade a second trier of fact of defendant's guilt, in a successive prosecution. According to the State, all the trial court did here when it entered its guilty finding was make a "final" ruling on the elements of the offense after all of the evidence and arguments had been presented. In other words, jeopardy terminated only when defendant was pronounced guilty of armed violence, and only at that point could he have been subjected to a second prosecution for the same offense.

¶ 53     The State seeks to support this theory with *United States v. Wilson*, 420 U.S. 332 (1975). In *Wilson*, the jury found the defendant guilty of embezzlement, but the trial court, ruling on a posttrial motion, dismissed the indictment because of a prejudicial preindictment delay. *Wilson*, 420 U.S. at 334-35. The court of appeals held that the trial court's postjudgment ruling was in effect an acquittal that the Government could not constitutionally appeal. *Wilson*, 420 U.S. at 335. The United States Supreme Court reversed, holding that the double

jeopardy clause does not prohibit a Government appeal when a judge rules in favor of a defendant after a verdict of guilty has been entered. *Wilson*, 420 U.S. at 352-53. While the Court in *Wilson* reaffirmed that the policies underlying the double jeopardy clause disallow a prosecutor to seek to persuade a "second trier of fact of the defendant's guilt after having failed with the first," and disallow the prosecution to reexamine the weaknesses in its first presentation in order to strengthen the second, *Wilson* also reaffirmed the rule that the Government cannot appeal an acquittal. *Wilson*, 420 U.S. at 352. In *Wilson*, the Government did not appeal a jury's verdict of acquittal, because the jury had entered a guilty verdict. *Wilson*, 420 U.S. at 352-53. The point of *Wilson* and *People v. Mink*, 141 Ill. 2d 163 (1990), where the State sought reconsideration of the trial court's order setting aside a jury's guilty verdict, is that reinstating the jury's verdict of guilty would not necessitate "further proceedings devoted to resolving the factual elements of the offense." *Mink*, 141 Ill. 2d at 180.

¶ 54    The State's one-trial-one-jeopardy theory finds no support in the law. Generally, jeopardy terminates when, in a bench trial, the judge enters a final judgment of acquittal. *Henry*, 204 Ill. 2d at 283. This means that the entry of a directed verdict in favor of a defendant is an acquittal for purposes of double jeopardy when there was insufficient evidence to establish, as a matter of law, defendant's guilt. *Henry*, 204 Ill. 2d at 283-84. Thus, jeopardy can terminate in the middle of a trial, preventing the remainder of the trial from proceeding. In *People v. Stout*, 108 Ill. App. 3d 96 (1982), after the State rested, the defendant moved for a directed verdict, which the trial court granted as to one count. *Stout*, 108 Ill. App. 3d at 98. Later that day, the prosecutor moved for reconsideration, and the trial court reversed itself. *Stout*, 108 Ill. App. 3d at 98. We held that the granting of a directed verdict is an acquittal and that the effect of a directed verdict is to bar, under double jeopardy principles, its vacatur or reversal, so that a trial court, therefore, "may not withdraw an order directing a verdict and permit the jury to make a finding on the charge." *Stout*, 108 Ill. App. 3d at 98-99. In commenting on *Stout*, our supreme court said that reconsideration and vacatur of the order granting the directed verdict "necessarily exposed the defendant to further proceedings devoted to resolving the factual elements of the offense," in violation of the double jeopardy clause. *Mink*, 141 Ill. 2d at 179.

¶ 55    In *Brown*, after a bench trial the defendant was convicted of armed violence and possession of a controlled substance. *Brown*, 227 Ill. App. 3d at 796. The defendant argued on appeal that he was subjected to double jeopardy when the trial court granted a directed finding in the defendant's favor on the charge of armed violence but then changed the ruling later in the same trial. *Brown*, 227 Ill. App. 3d at 796. The trial court initially granted the defendant's motion for a directed finding based upon the court's finding that the defendant was not guilty of the predicate offense of possession with intent to deliver. *Brown*, 227 Ill. App. 3d at 796. Then the State argued that the predicate could be the lesser included offense of possession, and, after some discussion, the trial court agreed with the State and denied the motion for a directed finding, and the trial continued with the defense case. *Brown*, 227 Ill. App. 3d at 797. Relying on *Stout*, the appellate court held that the directed finding was an acquittal based on insufficient evidence, which the trial court could not reconsider. *Brown*, 227 Ill. App. 3d at 799. The defendant's subsequent conviction, therefore, violated principles

of double jeopardy. *Brown*, 227 Ill. App. 3d at 799.

¶ 56    In *Smith*, the trial judge granted the defendant's motion for a directed finding on a firearms charge following the presentation of the Commonwealth's case. *Smith*, 543 U.S. at 464. The defense case then proceeded, and during the recess prior to closing argument, the trial court reversed its ruling on the directed verdict motion. *Smith*, 543 U.S. at 465. The jury convicted the defendant on all counts. *Smith*, 543 U.S. at 466. The United States Supreme Court held that the directed verdict in the defendant's favor was an acquittal. *Smith*, 543 U.S. at 467-68. The Court then determined that to continue the trial for the defendant's presentation of his case violated double jeopardy. *Smith*, 543 U.S. at 471-73.

¶ 57    *Stout*, *Brown*, and *Smith* demonstrate that the State in our case is mistaken in its theory that only a second prosecution with a second trier of fact constitutes double jeopardy. However, the State is correct that what followed the acquittal in our case is different from the type of proceedings that followed the directed verdicts in *Stout*, *Brown*, and *Smith*. Here, there was no further evidence presented by either side.

¶ 58    The State argues that no further fact-finding proceedings occurred, or were needed, because the trial court had made findings that were consistent only with guilt. Thus, according to the State, what happened here was really like what happened in *Wilson*, where the jury's finding of guilty was simply reinstated. This argument cannot stand, because (1) it is factually incorrect–here, the trial court acquitted; and (2) it is only another way of saying that the trial court can correct an erroneous acquittal.

¶ 59    A merits-related ruling concludes proceedings absolutely. *Evans*, 568 U.S. at ___, 133 S. Ct. at 1075. Under the fifth amendment, "a verdict of acquittal is final, ending a defendant's jeopardy." *Green*, 355 U.S. at 188. Consequently, defendant's jeopardy in our case ended when the trial court found him not guilty of armed violence based on insufficient evidence. Then, after defendant was no longer in jeopardy, the State pointed out the judge's mistake, whereupon the judge vacated the acquittal and continued the case for a ruling on count I. On the date the judge ruled, he stated, "This is here for my ruling on count I of the indictment following a bench trial." It is clear that when he first announced his ruling the judge had not considered the element of whether the gun was immediately accessible, because he said, "I had resolved it on another line of thinking, and I was wrong." When the matter came on for a ruling on count I, the judge announced that he would make further findings, and then he made findings of fact with respect to the immediate accessibility of the gun.[2] That there was no further testimony has to be inconsequential, because when the judge reopened the case for a ruling on count I, the effect was to renew the prosecution of the

---

[2]That the trial court made further findings of fact supports our holding that defendant was subjected to further prosecution, but even without further findings, we would hold that defendant's conviction violated double jeopardy for the reasons stated in paragraph 61. Practically speaking, any time a court consciously changes a finding from not guilty to guilty, it necessarily reweighs the facts in going from finding insufficient evidence to finding sufficient evidence.

-15-

charge of armed violence.[3] Defendant's trial ended when he was found not guilty. See *United States v. Hitchcock*, 6 M.J. 188, 190 (C.M.A. 1979). The prosecution was over. When the judge vacated the acquittal, "factually and legally, the accused was required to defend himself again against a charge as to which he had been acquitted." *Hitchcock*, 6 M.J. at 190. There cannot be a second jeopardy without a former jeopardy. *People v. Medina*, 287 Ill. App. 3d 690, 698 (1997). Here, when defendant was acquitted he had already once been put in jeopardy, and his jeopardy had terminated. The conclusion is inescapable that, when the judge vacated the acquittal and continued the case for a second ruling on the same offense, defendant was then subjected to a second jeopardy.

¶ 60    In *Hitchcock*, the accused was court-martialed and tried before a military judge and court members. *Hitchcock*, 6 M.J. at 188. At the end of the prosecution's case, the military judge granted the accused's motion for a finding of not guilty as to one charge but reversed himself following a recess. *Hitchcock*, 6 M.J. at 188-89. The trial then continued as to both charges and the accused was convicted. *Hitchcock*, 6 M.J. at 189. In reversing, the United States Court of Military Appeals said: "Had the accused been charged with a single offense and had the trial judge granted a motion for a finding of not guilty, his correct announcement of his ruling would, then and there, have ended the trial; the ruling could not, thereafter[,] be subject to reconsideration and reversal." *Hitchcock*, 6 M.J. at 189. In *People v. Johnson*, 304 Ill. App. 3d 599 (1999), the trial court acquitted the defendant of aggravated criminal sexual assault. *Johnson*, 304 Ill. App. 3d at 601. The prosecutor then prevailed upon the judge to reverse himself and enter a conviction on a lesser included offense. *Johnson*, 304 Ill. App. 3d at 601. The appellate court held that there was no double jeopardy because "the court did not change its 'not guilty' finding on the greater offense," indicating that, if it had changed its mind on the greater offense, double jeopardy would have barred the conviction. *Johnson*, 304 Ill. App. 3d at 602.

¶ 61    We are persuaded that, once a defendant is acquitted, the court may not thereafter reconsider and vacate the acquittal. Where double jeopardy is applicable, its sweep is absolute. *Burks*, 437 U.S. at 11 n.6. In the earliest double jeopardy case considered by the United States Supreme Court, the Court recognized that at common law a defendant who was acquitted was perpetually discharged. *Ball v. United States*, 163 U.S. 662, 667 (1896). In ascertaining the meaning of a phrase taken from the Bill of Rights, it must be construed with reference to the common law from which it was taken. *Kepner v. United States*, 195 U.S. 100, 125-26 (1904). The United States Supreme Court has long understood that at common law, as to an acquitted defendant, the court could take no action other than to order his discharge. *Kepner*, 195 U.S. at 130. At common law, the protections against double jeopardy were designed to ensure that a citizen "shall not be brought into Danger of his Life for one and the same Offense, more than once." 2 William Hawkins, Pleas of the Crown, 368 (1721). The opposition to double prosecutions stems, in part, from this "danger." *Bartkus v. Illinois*, 359 U.S. 121, 154-55 (1959) (Black, J., dissenting, joined by Warren, C.J., and Douglas, J.).

---

[3]To paraphrase Justice Douglas, the State effectively got another "go" at defendant. See *Sapir v. United States*, 348 U.S. 373, 374 (1955) ("If the jury had acquitted, there plainly would be double jeopardy to give the Government another go at this citizen.").

Here, defendant was twice placed in danger of being convicted of the same offense. Accordingly, defendant's conviction of armed violence was barred by double jeopardy.

¶ 62                           III. Whether Remand Is Necessary

¶ 63      Defendant lastly raises an argument regarding his sentencing. Because we reverse his conviction of armed violence, and we remand for sentencing on defendant's remaining convictions, it is unnecessary to address this issue.

¶ 64                                   CONCLUSION

¶ 65      For the foregoing reasons, the judgment of the circuit court of Kane County is reversed and the cause is remanded.

¶ 66      Reversed and remanded.