In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-3413

MARCOS GRAY,

*Plaintiff-Appellant,*

*v.*

MARCUS HARDY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 7097 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED DECEMBER 3, 2015 — DECIDED JUNE 24, 2016

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. If Marcos Gray is to be believed, he has been living in disgusting conditions at Illinois's Stateville Correctional Center, where he has been for the last 15 years. Gray sued Stateville's warden, Marcus Hardy, in his individual capacity under 42 U.S.C. § 1983, alleging that the warden violated the Eighth Amendment by failing adequately to address (among other things) the infestation of vermin, insects, and

birds in Gray's cell. (Randy Pfister is now the warden at Stateville, but because this suit is not against Hardy in his official capacity, there is no need to substitute or add Warden Pfister at this stage.) The district court granted summary judgment to Warden Hardy, finding that none of the conditions Gray described were so bad that they violated the Eighth Amendment. Gray has appealed from the adverse judgment with respect to the infestations and unsanitary conditions, and he has also asked this court to direct the district court to consolidate his case with a similar pending class action in *Dobbey v. Weilding,* No. 13 C 1068 (N.D. Ill.). We conclude that Gray's individual claims were dismissed prematurely, and so we remand for further proceedings. At that point, the district court can decide how to coordinate this case with the class action.

## I

Gray's complaint, which he filed *pro se*, paints a dismal picture of conditions at Stateville. We take this statement from the materials Gray presented at summary judgment, without of course vouching for them. He sees cockroaches at least every other day, and sometimes as often as every few minutes. Birds fly and nest all over the prison, leaving their droppings on the floors and walls. Although prison officials attempt to remove the birds and their nests, they do so only once every three months. They wash the floors every other day, but the dander from vermin and the bird feces remain in difficult-to-reach places despite these efforts. Mice are often in Gray's cell, where they eat his food. The cell house is also infested with ants, spiders, flies, gnats, moths, and mosquitos. A big source of the problem lies in the prison's failure to fix broken windows and other holes in the wall, through which the birds and other pests re-enter as soon as they are removed.

Gray suffers from asthma, but before his time at Stateville, while he was incarcerated at the Cook County Jail, he had not had an attack for seven years. Since his transfer to Stateville, his attacks have increased to approximately one every other year and his medical records reflect regular prescriptions for asthma drugs such as albuterol. He also developed skin rashes about eight months after arriving at Stateville. A pest control company services the prison once a month, but Gray asserts that its efforts are ineffective, and the company does nothing about the birds. (The warden asserts that the company comes more frequently, but there is evidence supporting Gray's account, and so we credit it at this stage.) Gray does not allege that he has ever been bitten or directly harmed by any type of pest.

The prison's policies regulating cleaning supplies contribute to the unsanitary conditions that prevail. Gray receives only one towel, which is replaced every eight months; he also gets some watered-down disinfectant spray. He does not have access to mops, brooms, or buckets, and he is not permitted to store chemicals such as soap in his cell. He is allowed to purchase soap or detergent at the commissary, but because he may not store it, he must use it all at once.

Gray filed a grievance in April 2011, complaining that the cells were dirty and unsanitary, infested with the pests we have described, and that this state of affairs was causing him health problems. He marked the grievance "emergency" and addressed it directly to the warden. In May 2011 he wrote a note to the prison's Administrative Review Board asking for a response; the Board acknowledged receiving that note. In June 2011 the Board informed him that his grievance had been

received, but it did not respond on the merits. Gray re-sub-
mitted the grievance to his counselor and finally received an
answer in April 2012. But it was not a very satisfactory an-
swer. The letter, signed by a grievance officer and the warden,
acknowledged that wildlife enter the prison and it said that
the prison was making "[e]very effort" to keep it out. In addi-
tion, the letter pointed out that Gray's cellblock was sprayed
for bugs once a month and that the prison distributed clean-
ing supplies when requested.

## II

We take a fresh look at the record, because this case comes
to us from the district court's decision to grant summary judg-
ment in favor of the warden. *Payne v. Pauley*, 337 F.3d 767, 770
(7th Cir. 2003). We begin, however, with the warden's argu-
ment that there is nothing for us to do, because Gray failed to
respond properly to the warden's statement of undisputed
material facts, submitted under Northern District of Illinois
Local Rule 56.1(a). Had the district court relied on this alleged
lack of compliance, we would have a different case. See *Stevo
v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011) (recognizing that
district courts are entitled to insist on strict compliance with
the local rules). But the district court here, as it was entitled to
do, took a more flexible approach. Noting "its obligation to
construe *pro se* submissions leniently," the court overlooked
Gray's noncompliance with Local Rule 56.1 and construed
"the limited evidentiary materials he … submitted in the light
most favorable to him." It construed the facts presented by the
warden in the same light. We will do the same.

A

The Eighth Amendment can be violated by conditions of confinement in a jail or prison when (1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results "in the denial of 'the minimal civilized measure of life's necessities,'" and (2) where prison officials are deliberately indifferent to this state of affairs. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

We have identified several situations that meet this demanding test, including lack of heat, clothing, or sanitation. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Id.* An adverse condition of confinement, if endured over a significant time, can become an Eighth Amendment violation even if it would not be impermissible if it were only a short-term problem. *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997).

Reading the record in the light most favorable to Gray, we are satisfied that he has shown enough to avoid summary judgment on his claim that the myriad infestations and his lack of access to adequate cleaning supplies, taken together, deprived him of the basic human need of rudimentary sanitation in violation of the Eighth Amendment. See *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987) ([A] state must provide … reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities[.] (internal quotations omitted) (quoting *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980))).

The warden's only response is to pick apart the individual components of Gray's claim and to suggest that each one,

alone, is not intolerable. But Gray is entitled to have his complaint evaluated as a whole. So we will assume for the sake of argument that Gray's deposition testimony about the cockroaches alone may not describe a sufficiently serious condition to meet the first element of the Eighth Amendment test. Gray's description is not quite as awful as the plague of roaches in *Antonelli v. Sheahan*, where the inmate alleged that the roaches were constantly crawling on him and waking him up at night, and the prison was sprayed for bugs only twice during 16 months. 81 F.3d 1422, 1431 (7th Cir. 1996). In contrast, we found no Eighth Amendment violation where a prisoner alleged that he often saw several roaches at a time in his cell, which was treated by an exterminator every six weeks or so and additionally on request. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

Neither might Gray's complaints about the lack of access to adequate cleaning supplies, on their own, describe an Eighth Amendment violation. To date, we have recognized Eighth Amendment violations where prisoners are deprived of cleaning supplies and running water only in extreme circumstances. See, *e.g.*, *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (pre-trial detainee stated a claim by alleging unhygienic conditions and lack of access to running water and cleaning supplies); *Vinning-El v. Long*, 482 F.3d 923, 923–24 (7th Cir. 2007) (summary judgment in prison's favor reversed where prisoner was placed in a cell with blood and feces on the walls, without running water or sanitation supplies); *Johnson v. Pelker*, 891 F.2d 136, 139–40 (7th Cir. 1989) (reversing summary judgment for prison where prisoner's cell was smeared with feces and he was denied water and cleaning supplies). Here, added to his complaints about the vermin, insects, and birds, Gray reported that his towel (singular) was changed

only once every eight months and that he was denied access to adequate cleaning supplies. In combination, we find that this is enough to defeat summary judgment for the warden. Gray's limited ability to purchase soap from the commissary does not release the prison from its responsibility to provide access to sanitation. Hygienic supplies sufficient to meet basic needs are constitutionally required; it is not enough for the prison to "allow" inmates to purchase them.

The broken windows both exacerbate the situation and render ineffective some of the prison's efforts to address the problem. We accept the warden's point that a broken window at a detention facility is not, itself, a constitutional violation. *Dixon*, 114 F.3d at 642–43 (finding that broken windows alone might not support a claim, but cold can violate the Eighth Amendment, depending on its severity and duration, and the inmate's access to other ways to stay warm). But Gray is not presenting a stand-alone complaint about the windows. He asserts instead that the birds infesting the prison fly in through the windows, and that any remedy must involve fixing those entry points. In fact, *Dixon* supports Gray's position, because the court there took the same holistic view of the conditions that is needed here.

## B

Gray must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment, and that the warden's deliberate indifference caused that harm. See *Carey v. Piphus*, 435 U.S. 247, 264 (1978). The district court found that Gray "acknowledged that he has not suffered harm from the conditions of his confine-

ment." Although the court "believe[d] that Plaintiff's concerns about his long-term health [were] genuine," it did not find those concerns serious enough or concrete enough to support an Eighth Amendment claim. We do not read Gray's complaint and his supporting materials so narrowly: in our view, Gray has alleged both physical injury and psychological harm resulting from his conditions of confinement. We discuss the deliberate indifference requirement below.

When assessing an Eighth Amendment claim, we look for physical injury "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 523 (7th Cir. 2008). Gray contends that his asthma became worse as a result of the unsanitary conditions at Stateville, and that he also began suffering from skin breakouts within six to eight months of his arrival there. (Bearing in mind that this is a prison-conditions case, not a case about inadequate medical treatment, this is enough to show some physical injury. Excessive cold, for example, can also amount to an Eighth Amendment violation, even if the prisoner has not yet come down with the flu.)

Asthma, if serious enough, can constitute injury for Eighth Amendment purposes. See *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (noting that "[a]sthma, depending upon its degree, can be a serious medical condition"). Here, there is a factual dispute over the cause and severity of Gray's asthma. The warden tries to avoid it by arguing that Gray conceded that he cannot prove causation. Gray responded to a question about whether there are health risks associated with bird feces

by saying "[t]his is where it gets tricky." The warden also notes that Gray has needed treatment only every year and a half since he entered Stateville, although the medical records paint a somewhat different picture.

Gray's statement about the bird feces, however, is not an admission that he suffered no harm attributable to the unsanitary conditions. It is ambiguous. He might have meant that the situation was tricky because his condition might have been caused from the cumulative effect of the bird feces and the other pests. He might have meant that the science is tricky, but that he could prove the link at trial. Notwithstanding this inconclusive remark, Gray left no doubt that he was alleging that his worsened asthma symptoms (as compared to those he had while at Cook County Jail) resulted from increased dust and dander. He presented evidence of the infestations and his worsened health, and he suggested that the timing indicated a causal link.

Gray's lack of an affidavit from a medical expert does not doom his *pro se* claim at this stage. Gray litigated his case without counsel until this Court recruited counsel for him after the filing of one round of appellate briefs. The warden asserts that the case cannot go forward unless Gray can present scientific evidence showing the necessary causal relation. He relies on a case in which an inmate sought damages for *future* injury from second-hand smoke exposure. In that situation, we held, the inmate needed to show "to a degree of reasonable medical certainty" that he actually faced an increased risk of injury. *Henderson v. Sheahan*, 196 F.3d 839, 851 (7th Cir. 1999). Gray is not alleging future injury, though, and so *Henderson* is not helpful. He alleges that he already has suffered injuries (worsened asthma, skin rash), and he relies on the

common-sense link between excessive dust, insect dander, and the like, and compromised breathing. While it surely would have been better if Gray had been able to locate a medical expert, the fact that he was unable to do so from prison does not in this situation spell the end of his case.

Gray also alleges that he has suffered psychological harm from the environment he has described. Although the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), bars prisoners from bringing a suit based only on mental or emotional injury, Gray's case is not so limited: he also alleges physical injury. Furthermore, we have recognized that "[a]lthough § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional injuries suffered, the statute is inapplicable to awards of nominal or punitive damages for the Eighth Amendment violation itself." *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003) (quoting § 1997e(e)).

In determining whether filth and infestation comparable to that which Gray experienced would be enough to prove an Eighth Amendment violation, we have noted that:

> Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, what particular psychological sensitivities the prisoner was known to have (recall Winston's unreasoning fear of rats in *Nineteen Eighty–Four*, a fear exploited by his torturers to break his spirit without actually touching him, *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998)), and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm

> sufficient to support a claim of cruel and unu-
> sual punishment even if he had not contracted a
> disease or suffered any physical pain.

*Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). "The poten-
tial psychological harm from living in a small cell infested
with mice and cockroaches is pretty obvious." *Id.* at 615.

Gray's summary judgment materials, we conclude, pre-
sent triable issues of fact for a jury, which must determine the
degree of both physical and psychological harm he suffered
as a result of the infestations and dirt. If the jury finds that
Gray suffered only psychological harm, he will be limited to
nominal and punitive damages.

## C

The final hurdle Gray must clear is the need to demon-
strate a triable issue of fact on the question whether the war-
den was deliberately indifferent to his substandard living
conditions. *Farmer*, 511 U.S. at 834. The warden must have
"kn[own] of and disregard[ed] an excessive risk to inmate
health or safety." *Id.* at 837. More than that, the warden must
have been "both … aware of facts from which the inference
could be drawn that a substantial risk of serious harm ex-
ist[ed], and he must also [have] draw[n] the inference." *Id.*
Gray does not, however, bear the burden of proving that the
warden "acted or failed to act believing that harm actually
would befall" Gray; it is enough to show that he "acted or
failed to act despite his knowledge of a substantial risk." *Id.* at
842. Evidence that the warden "must have known" about the
risk of physical or psychological harm resulting from the un-
sanitary conditions is sufficient for a jury to find deliberate

indifference. *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001), citing *Farmer* (511 U.S. at 842–43).

Gray's grievance demonstrates the prison and warden's knowledge of the conditions about which he is complaining. The response he received was signed by Warden Hardy. The grievance and response are thus sufficient to create a triable issue of fact on deliberate indifference. See *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("an inmate's letters to prison administrators may establish a basis for § 1983 liability" where "the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to an excessive risk to inmate health or safety" (internal quotation marks omitted)). (We note that Warden Hardy does not rely on *Vance v. Rumsfeld*, 701 F.3d 193 (7th Cir. 2012) (*en banc*), which held, following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that knowledge of subordinates' misconduct is not enough for liability. 701 F.3d at 204. Regardless, Gray alleges that Hardy not only knew about the problems but was personally responsible for changing prison policies so that they would be addressed.)

The warden responds that because he started his job in 2009, and Gray experienced asthma attacks only every 18 months or so, he had not been around long enough at the time Gray complained to have notice of the conditions and Gray's resulting health problems. But that assumes that Gray's grievance was not enough in itself to give him *notice*, regardless of the timing of Gray's latest attack. Even if Gray had never filed the grievance, a jury could infer that the warden was aware of the pest infestations in the facility. See *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to

know about or participate in creating systematic jail conditions" such as "inadequate hygiene"). Nothing more is needed at this stage: the risk of both physical and psychological harm is obvious—children are taught the importance of washing their hands before kindergarten, and the repulsive nature of cockroaches and mice is hardly subject to dispute.

The warden also argues that the prison took reasonable steps to address the problems about which Gray complains, through its trimonthly bird removal program and its monthly exterminator visits. Gray asserts, however, from his personal experience, that these efforts were ineffective, perhaps because the vermin came right back in through the broken windows, perhaps because the frequency was inadequate to address the problem, or perhaps for other reasons. Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference.

## III

The only loose end we must tie up relates to Gray's request that his case be consolidated with *Dobbey v. Weilding*, a class action that was certified in the Northern District of Illinois on February 11, 2014. *Dobbey* also involves allegations about infestations of birds, mice, and cockroaches, and a failure to provide cleaning supplies. Gray is a member of the class, and there is no opt-out right because it was certified under Federal Rule of Civil Procedure 23(b)(2). It appropriately seeks injunctive relief only, and so as presently structured it does not include Gray's damages claims. Rather than telling the district court how these two cases should be coordinated, we think it best to leave that to the court's discretion on remand. The

overlap is evident, and there may be other prisoners in Gray's position.

For now, it is enough to say that Gray has presented enough to defeat summary judgment in the warden's favor. We REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.