**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 15, 2018[*]
Decided August 16, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 17-3078

| | |
|---|---|
| RONALD R. SHEA, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Western Division. |
| *v.* | |
| | No. 3:12-cv-50201 |
| WINNEBAGO COUNTY SHERIFF'S | |
| DEPARTMENT, et al., | Philip G. Reinhard, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Ronald Shea sued his sister and brother-in-law, alleging primarily that they had attacked him while trying to remove him from his elderly mother's house. In the same broadly-framed suit, he named a number of Winnebago County sheriff's deputies and

---

[*] Defendant-appellee Tammy Hutzler has not filed a brief and is therefore not participating in this appeal. We have agreed to decide this case without oral argument because the remaining briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

jail employees involved in his arrest and incarceration for domestic battery following the altercation, as well as the local prosecutors who brought the charge. Further, he targeted the University of Illinois College of Medicine and two of its employees because the College allegedly had some responsibility for his inadequate medical care at the county jail. The majority of Shea's claims were dismissed, but a battery claim against his sister proceeded to trial; a jury found in her favor. We conclude that Shea's operative complaint stated other plausible claims that should have been allowed to proceed, so we vacate and remand for reconsideration of those claims. But we reject the remainder of Shea's challenges and otherwise affirm the judgment.

We recite the facts as Shea alleged them, drawing all possible inferences in his favor. *See Cannici v. Vill. of Melrose Park*, 885 F.3d 476, 479 (7th Cir. 2018). Shea, a lawyer, moved into his elderly mother's home in Roscoe, Illinois, at her request. He assembled a bed in his deceased father's office, which he dubs his "bedroom." But his sister and brother-in-law, Carolyn and Douglas Koehler, wanted to "isolat[e]" Shea's mother in order to take control of her estate. So, they attempted to forcefully remove Shea from his mother's house. On November 26, 2011, in "three successive attacks," Carolyn "repeatedly kicked [Shea's] head while he was sleeping on the floor of his bedroom." In the third attack, Carolyn "denuded [Shea] of his pillow and blanket, abrading [his] left eye." In between each attack, the Koehlers "kicked open" Shea's "locked bedroom door" and "forcibly escorted" him down the hallway "in their grip, and under threat of murder." Then the Koehlers "wrongly confined [Shea] to his bedroom by blocking his bedroom doorway with their bodies." During all of this, Douglas "brandished his fists" at Shea, causing him "imminent fear of being seriously injured or murdered."

Carolyn then "filed a false criminal complaint" against Shea, resulting in his arrest for battery. Shea spent over 70 hours incarcerated in the Winnebago County Jail, where he was denied medical care for his injuries, warm clothing, and prescription medication, as well as the right to seek legal counsel or bail. The conditions at the jail were insufficient to accommodate Shea's disabilities—including an autoimmune disorder causing "extreme temperature sensitivity," a sleep disorder, anxiety, and depression. The battery case ended in a "directed verdict dismissing all charges."

The Koehlers made other "false allegations" against Shea to sheriff's deputies, including that Shea had committed a hit-and-run against one of his mother's caregivers and had stolen the keys to his mother's house. Further, they conscripted a caregiver, Tammy Hutzler, into filing a false action "seeking a restraining order to prohibit" Shea from "seeing his mother." This petition was "denied outright by the court."

Shea responded to these events by filing suit. His original complaint was over 100 pages long, recited a great deal of unnecessary detail about Shea's personal background, and attached a number of unrelated exhibits. The district judge struck it sua sponte for failure to comply with Federal Rule of Civil Procedure 8(a)(2). The judge allowed Shea to amend, but then struck Shea's first amended complaint—which was shorter but still contained a great deal of extraneous material—for the same reason.

The judge accepted Shea's second amended complaint, which asserted over twenty "counts." Most were Illinois tort claims, but there also were several federal claims against the Koehlers, jail employees, sheriff's deputies, and prosecutors. The defendants filed a flurry of motions to dismiss under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). The district judge admirably and patiently reviewed the complaint by "count" and dismissed all but one: the battery claim against Carolyn. After a two-day trial—at which Shea represented himself and testified at length—the jury returned a verdict in Carolyn's favor.

## I.      Striking of Original and First Amended Complaints

We first reject Shea's appeal of the district court's decisions striking his first two complaints. After those decisions, Shea filed a second amended complaint, which then "supersed[ed] all previous complaints and control[led] the case from that point forward." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Shea had the opportunity to assert any and all of his grievances in the second amended complaint, so he suffered no prejudice from the striking of his first two complaints. *See id.*; *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–05 (7th Cir. 1998).

## II.     Dismissal of Claims in Second Amended Complaint

Shea next challenges the dismissal of 20 of the 23 "counts" alleged in his second amended complaint. He does not appeal, and therefore we do not discuss, the dismissal of Count 13 (for "restitution damages" from the Koehlers), Count 19 (for "false light" arising from his medical treatment at the jail), or Count 23 (for violations of his constitutional rights by two prosecutors). But we will discuss the dismissal of the remaining 20 claims. Some we agree were properly dismissed for essentially the same reasons as those given by the district court, some we conclude ought to have been dismissed for different reasons, and some we conclude must be revisited because Shea's complaint, taken as a whole, stated those claims plausibly.

We note first, however, that a count-by-count rundown was not required here. Plaintiffs need not plead legal theories, and must plead in "counts" only if they are founded on different occurrences and doing so would promote clarity. FED. R. CIV. P. 10(b). "Counts" and "claims" are not the same thing, though they are often conflated, and there is no such thing as a "cause of action" in federal practice anymore. *See Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–78 (7th Cir. 1992). We ask simply whether "any set of facts consistent with the complaint would give [the plaintiff] a right to recover, no matter what the legal theory." *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005). Even so, the district judge took the complaint as he found it and marched through the counts, each corresponding to a separate legal theory, and Shea does the same on appeal, as he did in response to the motions to dismiss. For the sake of simplicity, then, we follow the lead of the parties and the district court and address the "counts" as they are set forth in the complaint, while at the same time looking at Shea's complaint "as a whole" to determine if *any* set of facts alleged would entitle him to relief. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016).

A.  Counts Relating to Shea's Detention and Prosecution

Shea contests the dismissal of his federal claims under 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, as well as state-law claims he filed against healthcare workers he encountered while in jail. We affirm the dismissal of these claims—set forth in Counts 16, 17, 18, 20, 21, and 22 of the second amended complaint—for substantially the same the reasons provided by the district court, which we therefore summarize only briefly. First, we agree that Shea did not sufficiently set forth a "short and plain statement" of the events giving rise to the "section 1983" claim in Count 16 or the Americans with Disabilities Act claim in Count 17. FED. R. CIV. P. 8(a)(2). Instead, he alleged a litany of problems he experienced while in jail and after he was released, in most cases giving no explanation of who was responsible for those problems or how he was harmed by a particular person's actions.

The district court properly dismissed the "false imprisonment" claim (Count 18) because the complaint contained only the conclusory allegation that Shelli Sublett and Wendy Lowery, the two medical-college employees, "recommended" his continued unlawful incarceration. The related negligence count against Sublett (Count 20), apparently premised on her failure to "accurately record" a conversation with Shea, also failed to provide a sufficiently "plain" recitation of Shea's grievance to satisfy Rules 8(a)(2) and 12(b)(6).

Count 21 against Sublett, the College, and two "Doe" defendants, which alleges that the defendants committed battery by exposing Shea to cold temperatures, also failed to state a claim. Shea did not allege any physical contact that could be viewed as "offensive touching," and if he meant to invoke medical battery, his allegations had nothing to with medical procedures performed without sufficient consent.

Finally, Count 22, accusing Sublett, Lowery, and two "Does" of intentionally inflicting emotional distress on him, lacked supporting factual allegations anywhere in the complaint suggestive of knowingly "extreme and outrageous" conduct.

B.  Counts Related to Shea's Family Dispute

The rest of Shea's complaint targets the Koehlers or Hutzler, a caregiver for Shea's mother. Several of these claims we address summarily, as we agree with the district court's substantive analysis of them. For the intrusion-into-seclusion claim (Count 4), Shea failed to set forth when or how the Koehlers exposed any "private facts" of his life. In his trespass claim (Count 5), he did not assert or imply that he had exclusive possession of his mother's house or his late father's office. Shea also did not allege, for purposes of Count 7's trespass-to-chattels claim (the "chattels" being his bedding) that the supposed trespass caused any harm. Relatedly, Shea did not allege that he demanded possession of the bedding for purposes of his conversion action (Count 8). Further, we agree that Shea did not meet the heightened pleading standard for fraud (Count 11) required by Federal Rule of Civil Procedure 9(b). Finally, Shea did not allege any "extreme and outrageous" conduct by the Koehlers for purposes of his emotional-distress claim (Count 12), nor did he plausibly allege that the Koehlers formed an "enterprise" engaged in racketeering activity (Count 14).

We next dispose of the only claim against Hutzler, who has not filed a brief, for malicious prosecution "at the instigation of" the Koehlers (Count 15). Shea alleged that the Koehlers and Hutzler "maliciously" sought a restraining order against him to prevent his contact with his mother for "no legitimate purpose." The district court rightly concluded that Shea insufficiently alleged any actual participation by the Koehlers in requesting a restraining order. The district court then concluded that Shea had not alleged that Hutzler started any *criminal* proceedings without probable cause. But, as Shea points out, malicious prosecution in Illinois extends to *civil* proceedings such as requests for orders of protection. *See Howard v. Firmand*, 880 N.E.2d 1139, 1142–43 (Ill. App. Ct. 2007). Still, a malicious-prosecution action based on civil proceedings must have resulted in "special damage beyond the usual expense, time or annoyance in defending a lawsuit." *Id.* at 1144 (citation omitted). Shea alleged no

"special" damages to his "person" or "property" resulting from the failed attempt at procuring a restraining order petition, *see id.*, and his fear of losing contact with his mother as a result of a restraining order did not materialize.

Similarly, we agree with the district court's disposition of the defamation claim against the Koehlers (Count 10), but on different grounds. Shea alleged that Carolyn filed a "false criminal complaint" in November 2012 accusing him of domestic battery, and Douglas falsely reported to sheriff's deputies in December 2012 that Shea had committed a hit-and-run, was wrongfully using his mother's van, and was "stealing" his mother's keys. The claim fails, not for lack of detail as the district court said, but because, in Illinois, "statements made to law enforcement officials, for the purpose of instituting legal proceedings, are granted absolute privilege" against defamation actions. *Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1055 (Ill. App. Ct. 2009) (quoting *Vincent v. Williams*, 664 N.E.2d 650, 655 (Ill. App. Ct. 1996)).

Having disposed of much of the second amended complaint, however, we conclude that other tort claims against the Koehlers, besides the battery claim against Carolyn that went to trial, should have survived dismissal. When we evaluate the complaint "as a whole," *Gray*, 826 F.3d at 1005, and not merely the discrete "counts" as pleaded, a few more colorable claims are discernable.

The first claim in this category is Shea's civil-conspiracy claim against the Koehlers (Count 1). An Illinois civil conspiracy requires three elements:

> (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.

*Fritz v. Johnston*, 807 N.E.2d 461, 470 (Ill. 2004). The district court concluded that Shea "merely characterize[d] a combination of acts as a conspiracy" and therefore did not identify a conspiratorial purpose. But Shea alleged that Carolyn and Douglas acted with the "common purpose of isolating Phyllis Shea from her son, Ronald Shea," and that they acted with the "ultimate goal of wrongfully securing a disproportionate interest in the estate of Phyllis Shea." The complaint, which alleges instances of battery, assault, and false imprisonment, supports a plausible inference that the Koehlers committed tortious acts to further that wrongful purpose. More specific facts are not necessary. *See, e.g., Fiala v. Bickford Sr. Living Grp., LLC*, 43 N.E.3d 1234, 1250–53 (Ill. App. Ct. 2015) (describing allegations that stated claim of civil conspiracy in Illinois).

Next is the battery claim (Count 2). Although Shea focused on Carolyn for allegedly kicking him repeatedly in the head (the portion of the case that went to trial), Shea added that "Carolyn and *Doug* Koehler forcibly escorted [him] down the hallway in their grip" (emphasis added). The district court concluded that Shea had not alleged any harm from his encounter with Douglas. But in Illinois, a defendant can be liable for contacts that are "relatively trivial ones which are merely offensive and insulting." *Cohen v. Smith*, 648 N.E.2d 329, 332 (Ill. App. Ct. 1995) (citation omitted). The allegations that Douglas "grip[ped]" and forced Shea down the hallway meet that low threshold.

The district court also concluded that Count 3, against both of the Koehlers for assault, was "void of any allegations with respect to Carolyn Koehler and any action that could amount to an assault." We disagree. Shea alleged in other paragraphs of the complaint that Carolyn approached him while he was sleeping and began kicking him in the head. Those allegations support a battery, but they also support an assault—Shea explained that Carolyn's intentional act (kicking) caused him to reasonably fear serious injury or death, i.e., an imminent battery. *See McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001); *see also Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) (noting that assault "whether civil or criminal" requires "threatening gesture" that "creates a reasonable apprehension of an imminent battery" (emphasis omitted)). Shea also alleged that, during Carolyn's "attacks," Douglas "brandished his fists" at Shea. A reasonable person could understand this gesture as threatening a hit or punch. This is particularly true in light of the context: Douglas allegedly brandished his fists at Shea while his wife was kicking Shea in the head, and while he assisted with blocking Shea from leaving the room. It is plausible that Shea feared an imminent battery from Douglas's actions as well as from Carolyn's. *See Kijonka*, 363 F.3d at 647.

We next conclude that Shea stated a claim of false imprisonment against the Koehlers (Count 6). In Illinois a false imprisonment "is defined as an unlawful restraint of an individual's personal liberty or freedom of locomotion," in which "a person is compelled to remain where he does not wish to remain or to go where he does not wish to go." *Lopez v. Winchell's Donut House*, 466 N.E.2d 1309, 1311 (Ill. App. Ct. 1984) (citation omitted). It may be accomplished by "words alone, by acts alone or both." *Id.* The district court concluded that Shea had not alleged that any of the Koehlers' actions were "against his will," unlawful, or unreasonable. We cannot agree. First, a plaintiff is not required to plead factual allegations that line up with the elements of some recognized claim. *See Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017). Second, Shea's allegations were sufficient. He alleged that the Koehlers "wrongfully restrained and confined" him by "forcibly escort[ing] him down the hallway in their

grip, and under threat of murder." They further "wrongly confined" him to his bedroom by "blocking his bedroom doorway with their bodies." Shea did not wish either to go down the hallway "under threat of murder" or to be "wrongly confined" to his bedroom. And it is unclear how any of these actions could be lawful unless the Koehlers had some right to tell him where to go or stay. *Cf. Sassali v. DeFauw*, 696 N.E.2d 1217, 1218 (Ill. App. Ct. 1998) (noting that "lawful arrest" is affirmative defense to false imprisonment).

Finally, we consider Shea's malicious-prosecution claim against the Koehlers arising out of his battery prosecution (Count 9). We first agree that Shea did not allege that Douglas took any actions resulting in his prosecution. But the same is not true for Carolyn. Shea alleged that Carolyn filed a false criminal battery complaint against him and that ultimately "the bench issued a directed verdict dismissing all charges against" him. Shea's allegations that Carolyn "intentionally and maliciously filed a false criminal complaint" are enough to conclude that she did not have an "*honest* belief" that Shea was "probably guilty of an offense," *Howard*, 880 N.E.2d at 1142 (internal quotation marks omitted). Therefore, she could be responsible for maliciously initiating his prosecution by providing false information about him to the police. *See Randall v. Lemke*, 726 N.E.2d 183, 185–86 (Ill. App. Ct. 2000).

The district court gave another reason for dismissing the malicious-prosecution claim—that Shea did not allege that the proceedings "were terminated in a manner indicative of innocence." Although it is true that the proceedings must usually be terminated "on the merits," *Cult Awareness Network v. Church of Scientology, Int'l*, 685 N.E.2d 1347, 1353 (Ill. 1997), this is generally to ensure that the termination was not entered for procedural or technical reasons, *see id.*; *Swick v. Liautaud*, 662 N.E.2d 1238, 1242–43 (Ill. 1996) (ruling that nolle prosequi is "favorable termination" unless entered for reason unconnected to facts of case). Shea's case (he says) ended in a directed verdict, which is the functional equivalent of an acquittal. *See People v. Cervantes*, 991 N.E.2d 521, 535 (Ill. App. Ct. 2013). Unless it was clear that the directed verdict was entered for a non-merits reason, the claim should not have been dismissed on that ground. *See Cult Awareness Network*, 685 N.E.2d at 1354.

## III.    Discovery, Pretrial, and Trial Rulings

Shea also challenges several rulings made by both the magistrate and district judges leading up to and during the battery trial. We do not see any abuse of discretion with regard to these rulings. *See Evans v. City of Chicago*, 513 F.3d 735, 741–42, 744 (7th Cir. 2008). Some of Shea's requests were frivolous—for example, he purported to

appeal to the district court a decision of the magistrate judge preventing him from taking his mother's deposition; not only was this appeal egregiously late under Federal Rule of Civil Procedure 72(a), but by the time he filed it, his mother had died, a fact the district court could not change. Similarly, some of the rulings did not prejudice him. For example, he challenges the district judge's pretrial denial of his request to admit all hearsay testimony of his late mother, but the judge reasonably explained that hearsay would be evaluated as it arose during trial. Shea also waived some challenges—such as to the admission of his booking photos and a photo of a bruise on Carolyn's arm—by failing to object at trial. *See Walker v. Groot*, 867 F.3d 799, 804 (7th Cir. 2017).

As for the remainder of the challenged rulings, we conclude that the district court soundly exercised its discretion to "narrow and focus the operative legal issues" as the trial date approached. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014). The case dragged on for over five years, and throughout that time Shea argued about irrelevant issues and inundated the court with needless filings. At one point—after receiving scores of pages of motions in limine, motions to strike, and offers of proof—the district judge ordered the parties not to file anything further without permission. This does not mean, however, as Shea argues, that he was prohibited from filing any post-trial or post-judgment motions. There is no suggestion that Shea attempted to file such a motion but was denied the right to do so.

## IV.    Conclusion

In closing we note once again that the district judge demonstrated remarkable patience with Shea over the life of the case and particularly with respect to Shea's efforts to file a proper complaint. As an attorney, Shea was not owed the solicitousness a typical pro se litigant would have been, *see Cole v. C.I.R.*, 637 F.3d 767, 773 (7th Cir. 2011), but the district court allowed him to re-plead twice after filing an impenetrable tome of a complaint to start with. The judge then painstakingly evaluated that complaint. We agree with the district judge that the "excessive number of claims" and the "conclusory allegations against multiple defendants" muddied the proceedings, and our ability to discern a few more claims does not detract from the district court's admirable handling of the case.

We note that, on remand, the district court may consider its discretion to relinquish supplemental jurisdiction over the remaining state-law claims—that is, all of the plausible claims we have identified in this decision. *See* 28 U.S.C. § 1367(c)(3); *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). Shea asserts that diversity jurisdiction exists, but that proposition is dubious. At the time he filed his

complaint, which named numerous Illinois actors, Shea contended that his "residence" was in California, but he also alleged that he had "moved" to his mother's home in Illinois with an intent to stay. These allegations are insufficient to establish Shea's "domicile," which is distinct from his "residence," and which is necessary for Shea to meet his burden to show that diversity jurisdiction existed at the time he filed his complaint. *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). If diversity is lacking, the only basis for jurisdiction is Shea's federal statutory claims, which have now all been dismissed. In this situation, there is a "general presumption" that the district court will relinquish jurisdiction over the state-law claims, *Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013), by dismissing the remainder of the suit without prejudice for lack of subject-matter jurisdiction, *see Fields v. Wharrie*, 672 F.3d 505, 518–19 (7th Cir. 2012). True, Shea's tort claims are now outside of the Illinois statute of limitations. *See RWJ Mgmt. Co.*, 672 F.3d at 480 (presumption of relinquishing jurisdiction is rebutted if state-law claims would be time-barred). But under another Illinois statute, he has one year after a jurisdictional dismissal to file them in state court. 735 ILCS 5/13-217; *Kay v. Bd. of Educ. of the City of Chicago*, 547 F.3d 736, 739 (7th Cir. 2008). The district court will be in the best position to decide if any other reasons counsel in favor of it retaining the case, *see RWJ Mgmt. Co.*, 672 F.3d at 480.

Shea stated claims for civil conspiracy, assault, and false imprisonment against Douglas and Carolyn Koehler, battery against Douglas Koehler, and malicious prosecution against Carolyn Koehler, so we VACATE the dismissal of those claims and REMAND for further proceedings on them. In all other respects, the judgment is AFFIRMED.