FILED

Jan 25 2024, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Asher B. Hill<br>Carlisle, Indiana | Theodore E. Rokita<br>Attorney General |
| | Abigail R. Recker<br>Deputy Attorney General<br>Indianapolis, Indiana |

IN THE
# COURT OF APPEALS OF INDIANA

Asher B. Hill,
*Appellant-Plaintiff,*

v.

K. Chesterfield and
Sgt. B. Vaughn,

*Appellees-Defendants*

January 25, 2024

Court of Appeals Case No.
23A-CT-1649

Appeal from the
Sullivan Circuit Court

The Honorable
Hugh R. Hunt, Special Judge

Trial Court Cause No.
77C01-2212-CT-658

**Opinion by Judge Vaidik**
Judge Bradford concurs.
Judge Brown dissents with separate opinion.

**Vaidik, Judge.**

# Case Summary

[1] Asher B. Hill, a Department of Correction inmate, appeals the dismissal of his lawsuit against two DOC employees. We affirm.

# Facts and Procedural History

[2] In December 2022, Hill filed a 42 U.S.C. § 1983 lawsuit against DOC employees "B. Vaughn" and "K. Chesterfield." As relevant here, he alleged: (1) on March 29, 2021, Chesterfield shut off the water to Hill's cell; (2) when Hill asked why, Chesterfield said that an inmate in another cell had threatened to "flood the range"; (3) Chesterfield "refused to explain" why this meant his water had to be shut off; (4) Vaughn arrived and explained that the water lines were connected; (5) when Hill asked if the other inmate could be moved to a flood-proof cell, Vaughn replied, "You don't tell me how to do my job"; (6) Hill asked other correctional officers to turn his water back on and was told that Vaughn had ordered them not to; (7) on April 9, 2021, a maintenance worker turned Hill's water back on and told Hill his water didn't need to be turned off because the cells have separate shutoff valves; (8) because his water didn't need to be shut off, Chesterfield and Vaughn acted "maliciously"; (9) Hill's waste "accumulated in his toilet," and he eventually "held his bowels and bladder to the point that he suffered severe headaches and stomachaches"; (10) the smell made Hill "nauseated and puked [sic] and most of the time he was unable to

finish his meals"; (11) Hill could not wash his hands before eating or after using the restroom; and (12) Hill had to get water from another inmate. Appellant's App. Vol. II pp. 9-15.

[3] Because Hill is incarcerated, the trial court was supposed to "docket the case and take no further action" until it reviewed the complaint. *See* Ind. Code §§ 34-58-1-1, -2. It appears the court failed to conduct that review and instead had the complaint served on the defendants. Two months later, the defendants hadn't answered or otherwise responded to Hill's complaint, so Hill filed a motion for default judgment. The court failed to rule on that motion within thirty days, so the assigned judge was removed from the case and a special judge was appointed. The special judge conducted the review required by Section 34-58-1-2 and concluded:

> Though Plaintiff may be able to establish that the Defendants were not very knowledgeable regarding the plumbing in and around his cell, neither his complaint nor the factual basis in support of same shows that Defendants' acts were criminal, malicious, willful and wanton, outside the scope of their employment, or calculated to benefit them personally, and as such he has advanced no meritorious claim for relief.

Appellant's App. Vol. II p. 8. Therefore, the court dismissed Hill's complaint and denied his motion for default judgment.

[4] Hill now appeals.

# Discussion and Decision

[5] Hill contends the trial court erred by dismissing his complaint and denying his motion for default judgment. The court dismissed the complaint under Section 34-58-1-2, which provides, in relevant part:

> A court shall review a complaint or petition filed by an offender and shall determine if the claim may proceed. A claim may not proceed if the court determines that the claim:
>
> (1) is frivolous;
>
> (2) is not a claim upon which relief may be granted; or
>
> (3) seeks monetary relief from a defendant who is immune from liability for such relief.

On appeal from such a dismissal, we review the complaint de novo, and we will affirm on any basis supported by the record. *Taylor v. Antisdel*, 185 N.E.3d 867, 872 (Ind. Ct. App. 2022), *trans. denied*.

[6] Hill sued under 42 U.S.C. § 1983, claiming the defendants acted "maliciously" when they turned off his water. "Section 1983 provides a vehicle by which plaintiffs can sue persons who abuse state power in a way that violates federal law." *Jones v. Cummings*, 998 F.3d 782, 788 (7th Cir. 2021). The flaw in Hill's complaint is that it doesn't allege any specific facts that would support such a finding that Chesterfield and Vaughn acted maliciously. *See Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) ("Even objectively serious injuries suffered by

prisoners, without the requisite *mens rea* on the part of prison officials, will not comprise a constitutional injury."). While Hill claims that his water didn't need to be turned off to deal with the flood threat from the other inmate, he didn't allege any facts suggesting that the defendants **knew** it was unnecessary and did it anyway. As the trial court put it, Hill alleged at most that the defendants "were not very knowledgeable regarding the plumbing in and around his cell."

[7]  Hill also alleged that his water was off for twelve days and that his cell eventually became unlivable, but he didn't allege that the defendants were aware of those facts. For example, Hill didn't allege that Chesterfield and Vaughn worked in the same housing unit in the days after turning Hill's water off or that they otherwise knew the water remained off for an extended period, were responsible for turning the water back on, or saw or heard about the deteriorating conditions in the cell. Hill claims he asked other correctional officers to turn his water back on and was told that Vaughn had ordered them not to, but he doesn't specify whether those conversations occurred the day the water was turned off or at a later date. If the defendants didn't know about the conditions in Hill's cell in the days after the water was turned off, they cannot be held liable for failing to remedy those conditions.

[8]  In arguing that we should reverse, the dissent notes that the U.S. Supreme Court has said pro se pleadings should be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers[.]" Slip op. at ¶12 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But as things stand that is not the law in Indiana. Our Supreme Court has made clear that "a pro se

litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014).

[9] Even if we construe Hill's complaint liberally, it still fails to state a valid claim under 42 U.S.C. § 1983. The dissent cites several cases for the proposition that depriving a prisoner of water or other necessities for a significant time can be "cruel and unusual" under the Eighth Amendment to the U.S. Constitution. That's indisputably true. But a "sufficiently serious" deprivation is only the first showing that must be made by a prisoner claiming a conditions-of-confinement violation under the Eighth Amendment. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The prisoner must also allege and show that the named defendants acted with a "sufficiently culpable state of mind." *Id.* And that's where Hill's complaint fails. As discussed above, the complaint is simply devoid of any allegations that Chesterfield and Vaughn—the only named defendants—knew that Hill's water didn't need to be turned off in the first place, that it remained off for a long period, or that Hill's cell eventually became unlivable.

[10] For all these reasons, the trial court didn't err by dismissing Hill's complaint and denying his motion for default judgment.[1]

---

[1] Hill's brief references Indiana Code section 34-13-3-5, which provides that employees of governmental entities are generally immune from suit for acts or omissions within the scope of their employment. Hill doesn't discuss the language of the statute or cite any caselaw applying it. But even if the defendants aren't immune from suit, Hill has failed to state a valid claim against them under 42 U.S.C. § 1983, for the reasons just discussed.

Affirmed.

Bradford, J., concurs.

Brown, J., dissents with separate opinion.

**Brown, Judge, dissenting.**

I respectfully dissent. The United States Supreme Court has held that pro se pleadings are "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).[2] The Court also held that a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id*. This Court has previously noted that Ind. Code § 34-58-1-2 "is akin to a legislative interpretation of Indiana Trial Rule 12(B)(6), a rule which has given judges in civil cases the authority 'to consider a case in its early stages and, taking everything the plaintiff has alleged as true, determine whether it can proceed.'" *Reed v. White*, 103 N.E.3d 657, 659 (Ind. Ct. App. 2018) (quoting *Guillen v. R.D.C. Mail Clerk*, 922 N.E.2d 121, 122-123 (Ind. Ct. App. 2010) (quoting *Peterson v. Lambert*, 885 N.E.2d 719, 720 (Ind. Ct. App. 2008))) (footnote omitted). When ruling on a motion to dismiss, the court must view the pleadings in the light most favorable to the nonmoving party with every reasonable inference construed in the non-movant's favor. *Thornton v. State*, 43

---

[2] In *Zavodnik v. Harper*, the Indiana Supreme Court observed that Plaintiff Gersh Zavodnik was "a prolific, abusive litigant." 17 N.E.3d 259, 262 (Ind. 2014). While the Indiana Supreme Court generally held that "a pro se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented," *id.* at 266, the Court did not address a claim under 42 U.S.C. § 1983 as it observed that "Mr. Zavodnik's submissions on appeal do not give any indication of the nature of his complaint against the defendant." *Id.* at 262. Unlike in *Zavodnik*, the United States Supreme Court specifically addressed a claim under 42 U.S.C. § 1983 in *Estelle*.

N.E.3d 585, 587 (Ind. 2015). We generally will not affirm such a dismissal unless it is apparent that the facts alleged in the challenged pleading are incapable of supporting relief under any set of circumstances. *Id.*

[13] Hill's complaint alleged that Chesterfield turned off the water to his cell on March 29, 2021, and refused to explain why another offender threatening to flood justified turning off the water to his cell, and that the water to his cell was maliciously turned off from March 29, 2021, until April 9, 2021, for a total of twelve days. Hill alleged that he asked Sgt. Vaughn if the offender who threatened to flood his cell could be moved to a flood-proof cell so that Hill's water could be turned on and that Sgt. Vaughn told him not to tell him how to do his job and walked away. He asserted that during this time he had to utilize the non-functioning toilet and he held his bowels and bladder to reduce the foul smell to the point that he suffered severe headaches and stomachaches. He alleged that meals were served to him in his cell where he was unable to wash his hands prior to eating, the stench of feces and urine made him nauseous and caused him to vomit, and he was unable to finish his meals. He alleged that he filed a grievance about Chesterfield and Sgt. Vaughn on April 1, 2021. He also asserted that he asked other correctional officers to turn his cell water back on and they informed him they were not permitted to do so pursuant to Sgt. Vaughn's order. Hill further alleged that maintenance later informed him that it was not necessary to turn off his water in order to prevent the other cell from flooding.

[14] "It has been clearly established for decades that prisons must provide inmates with 'the minimal civilized measure of life's necessities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981)). The Court of Appeals for the Seventh Circuit has "interpreted this general statement as a requirement that prisons provide inmates with 'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Id*. (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Lewis v. Lane*, 816 F.2d 1165, 1171 (7th Cir. 1987))). The deprivation of water can constitute a claim for a violation of the Eighth Amendment. *See id.* at 821 (citing *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (reversing a grant of summary judgment for the defendants because "placing a prisoner in a cell for three days without running water and in which feces are smeared on the walls while ignoring his requests for cleaning supplies" could violate the Eighth Amendment); *DeSpain v. Uphoff*, 264 F.3d 965, 974-975 (10th Cir. 2001) (stating that "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* [*v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970 (1994),] and the more general standards of dignity embodied in the Eighth Amendment"); *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (holding that a plaintiff "given only two half pints of milk and one sixteen and one-half ounce bottle of water" over three days stated an Eighth Amendment claim); *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (finding allegations of inadequate drinking water over four days, along with other deprivations, sufficient to state an Eighth Amendment claim), *cert. denied*, 532 U.S. 1065, 121 S. Ct. 2215 (2001)).

The United States Supreme Court has held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety" and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979. "This awareness requirement exists because 'prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment' in a manner that violates the Eighth Amendment." *DeSpain*, 264 F.3d at 975 (quoting *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970). "On the other hand, a plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' as long as the official should have understood the possibility that harm might ensue." *Id.* (quoting *Farmer*, 511 U.S. at 842, 114 S. Ct. 1970). "The test requires both knowledge and disregard of possible risks, a *mens rea* on a par with criminal recklessness." *Id*. (citing *Farmer*, 511 U.S. at 836, 114 S. Ct. 1970). "If an official is aware of the potential for harm but takes reasonable efforts to avoid or alleviate that harm, he bears no liability under this standard." *Id*. (citing *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970; *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995)).

Under these circumstances, taking the allegations in Hill's complaint to be true, and viewing the pleadings in a light most favorable to Hill as the nonmoving party with every reasonable inference construed in his favor, I would find that Hill proffered sufficient facts to show that his water was turned off for multiple

days leading to deprivations serious enough to implicate Eighth Amendment protections and that the reasonable inference of his allegations is that Chesterfield and Sgt. Vaughn had knowledge of the conditions. Accordingly, I would hold that the trial court erred by dismissing his complaint.